**William T. MILLER et al.,
Plaintiffs-Appellees,**

v.

**CITY OF BRENTWOOD, Tennessee, etc.,
Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section.

Original Opinion Dec. 3, 1975.

Certiorari Denied March 18, 1977.

Abridged Opinion April 1, 1977.

W. Harold Bigham, Robert D. Kamenshine, Nashville, for plaintiffs-appellees.

Robert H. Jennings, Jr., West, Jennings & Allen, Nashville, for defendant-appellant.

## OPINION

(Abridged for Publication)

TODD, Judge.

The plaintiffs are five married couples. Each couple owns a home in Meadowlake Subdivision. A drainage ditch passes by and/or through the properties of plaintiffs which are in the lower portion of Meadowlake Subdivision.

The gravamen of this suit is that the City of Brentwood, by granting building permits for construction which reduced the absorption of rainfall into the earth, has authorized and permitted an increase in the "runoff" of rainfall which overtaxes the drainage ditch, thereby causing flooding and damage to plaintiffs' property.

The defendant, City of Brentwood, has appealed from the decree granting relief to plaintiffs in the following terms:

". . . the Court finds that Defendant, The City of Brentwood, Tennessee, has caused increased flooding of Plaintiffs' properties and thereby has created an actionable nuisance, entitling Plaintiffs to appropriate injunctive relief. Accordingly,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That this Court's restraining order of September 13, 1974, to the degree that it enjoins Defendant from authorizing or issuing any further building permits for projects which will direct increased storm water drainage into the easements flowing past and/or through Plaintiffs' lots be made permanent.

2. That, within one year of the date of this order, Defendant shall prepare and file with the Court a uniform plan to render Defendant's storm water drainage system adequate so as to abate the nuisance already created.

3. That this Court retain jurisdiction over this cause.

4. That the Defendant City pay the costs of this cause, for which execution may issue if necessary."

Defendant's numerous assignments of error challenge the grounds, both factual and legal, for the relief granted by the Chancellor.

A review of Tennessee authorities fails to disclose any support for the action taken by the Chancellor.

In *Dixon v. City of Nashville*, 29 Tenn. App. 282, 203 S.W.2d 178 (1946) this Court recognized the right of a property owner to judicial relief from the *diversion* of surface water *from its natural courses* by a city, but said:

"[3] It is suggested that the damage was caused by the prevention of absorption due to the paving of Eden Street. While *the city* has a right to improve its property in any natural and ordinary way so long as there is no substantial change in the flow of surface water and *would not be liable for preventing absorption of water by paving its streets alone*, we think the actual cause was the deflection and concentration of the water into the drain. The surface of Eden Street, we think, is too small in comparison to the total drainage area above the alley to be a material factor." 29 Tenn.App., p. 289, 203 S.W.2d, p. 181. (Emphasis supplied)

In *Horton v. Mayor and City Council of Nashville*, 72 Tenn. (4 Lea.) 39 (1879), a suit was filed to compel the city to enlarge an inadequate sanitary sewer which was overflowing upon plaintiffs' property. The Chancellor overruled a demurrer. On appeal, the Supreme Court reversed, sustained the demurrer, dismissed and said:

"The main object of the bill is to compel the city, by mandatory decree, on final hearing, to construct a new sewer from complainant's lot along Broad street to the river, a distance, as shown by the bill, of 1,660 feet. The ground of demurrer assigned to this part of the relief sought is, that the building of a public sewer by a municipal corporation is the exercise of a legislative discretion, which the Court will not control. And to this effect are the authorities.

"No authority has been produced tending to show that a Court of Chancery has ever undertaken to compel a municipal corporation to construct a sewer in a particular direction, or of specified dimensions. . . . . Both reason and authority are against the power of the Chancery Court to grant the relief sought." 72 Tenn., pp. 47, 48.

*Horton v. Mayor* involved a sanitary sewer already built by the city and not a surface drainage problem as in the present case.

In *Chattanooga v. Reid*, 103 Tenn. 616, 53 S.W. 937 (1899), there was a suit against the city for damages for failure to abate a nuisance consisting of a pond fed by drainage from a private sewer. A circuit jury awarded damages of $250.00. The Supreme Court reversed for incorrect jury charge and said:

"The nuisance complained of . . . was created, and was being kept up by the daily and constant discharge into Grove street alley of garbage and sewage through this sewer on private property, and over which the city had no control. The accumulation of foul water and garbage, in so far as this record discloses, could only have been prevented by building a sewer to carry it off, or by taking appropriate measures to stop Strang and his tenants from turning it into the alley.

"It is a well-settled principle of law that a municipal corporation is not bound to build sewers, and that it is not responsible to a private citizen for failing to provide sewers for any part of its territory. The building of a public sewer by a municipal corporation is the exercise of a legislative discretion, and it is not responsible in a private action for its failure to exercise this discretion.

". . . The mere fact that a nuisance exists and has occasioned an injury to a third person, does not render the corporation liable therefor, provided the nuisance was *not created or maintained by the corporation itself*." 103 Tenn., pp. 621, 624, 53 S.W., pp. 938-939.

In *Garland v. Aurin*, 103 Tenn. 555, 53 S.W. 940 (1899), an upper landowner sued a lower landowner for obstructing natural drainage of surface water. The Circuit Judge sustained a demurrer. The Supreme Court reversed and said:

"'Land can not be cultivated or enjoyed unless the springs which rise on the surface and the rains that fall thereon be

allowed to make their escape through the adjoining and neighboring lands. All lands, therefore, are of necessity burdened with the servitude of receiving and discharging all waters which flow down to them from lands on a higher level, . . . .'

"We are unable to see any difference in principle between the reciprocal rights and duties of adjacent urban proprietors and those of adjacent rural proprietors; and hence we do not think it wise to apply one rule to city lots and a different rule to agricultural lands, especially in the same State." 103 Tenn., pp. 559, 560, 562, 53 S.W., p. 941.

In *Slatten v. Mitchell*, 22 Tenn.App. 547, 124 S.W.2d 310 (1938), the lower landowner sued for relief from the action of the upper landowner in erecting dams or barriers to prevent surface water from entering sinkholes on his property, resulting in excessive drainage upon the lower property. The decree of the Chancellor granting mandamus was reversed on grounds that mandamus will not lie to enforce a continuing, recurrent obligation. However, the Court said:

"As a matter of common knowledge of the unobstructed movement of surface waters, we think it obvious that, but for the aforementioned lateral ditches, a great part of the water falling on the terrain in Hickory Valley north of defendants' land would be diffused over the surface, in part absorbed by the soil, in part drained off in different courses, and only a small part, as compared with the volume of water ditched into the Hickory Valley Road, would reach that road and flow down the ditches therein to defendants' land.

.     .     .     .     .

"[9] *However, the defendants have assumed the burden* of permitting, and providing for, the diversion to the sinks on their lands of all the waters that come down Hickory Valley Road to their premises under ordinary normal conditions, such as may be reasonably anticipated, *by the gap or opening in the wall, and the ditch therefrom* to the sink in their field on the east side of the road, and by ditching the water from the west side of the road to the sinks in their field on that side." 22 Tenn.App., pp. 558, 562, 124 S.W.2d, pp. 317, 319. (Emphasis supplied)

In the foregoing quotation, this Court, at least by comment, recognized a part of the problem involved in the present case, i. e., the possible duty of an upper landowner to allow natural absorption (or drainage through sinkholes) of surface water which runs onto or falls as rain upon his land. However, there is no suggestion that a municipality may be forced by the courts to action, either preventative or remedial, against the violation of such duty.

In *City of Columbia v. Lentz*, 39 Tenn. App. 350, 282 S.W.2d 787 (1955) this Court affirmed a jury verdict and judgment for damages against a city for the overflow of a sanitary sewer built and maintained by the city. However, this case did not involve the natural flow of surface waters as in the present case.

Plaintiffs rely upon the unreported opinion of this Court in the case of *Davis v. Homemakers, Inc.*, (March 26, 1965) wherein the gravamen of the action was that

"defendant so arranged the apartment building that the down-spouts from the gutters direct all the water from its roof onto the paved portion of its parking lot in such a way that it is *directed towards*, and flows onto, the lot of complainants.

.     .     .     .     .

". . . complainants have suffered from a serious flowage of water . . . in such concentrated form . . .

.     .     .     .     .

". . . there are no storm sewers . . . and . . . there does not appear to be any practical method by which the surface water can be satisfactorily controlled."

"There is a dispute as to whether the improvement of defendant's property has resulted in a concentration . . ., it

being admitted that the flow has been accelerated.

". . . there is no absorption anywhere (on defendant's land) except in a small strip of unpaved land."

.  .  .  .  .

". . . the tearing up and removal of the paved surface . . . would not accomplish the result sought because . . . . (if) a surface of dirt or gravel . . . were put there, . . . the absorption qualities would not be increased enough to avoid the flow . . onto (the lot) of complainant . . ."
". . . much of the difficulty is . . . accumulation of water from the roof . . ."

■ This Court recognized the reality of the water-absorption problem in *Davis*, but held that the solution lay in directing the major drainage (from the roof) to a public storm sewer where no injury would result to adjoining property owners. *Davis* was not at all concerned with the central and determinative question in the present case, i. e., whether there is any liability of a city for damages or injunctive process for failure to restrain property owners from reducing water absorption of their land and/or for failure to provide adequate drainage facilities to drain water from improved property.

Appellant's brief urges that there is no reason for differentiating between a sanitary sewer system and a surface storm water drainage system. A number of distinctions are readily apparent:

1. Sanitary sewers transmit highly dangerous and offensive waste matter, whereas surface water is "rain from the skies," which is one of the purest natural forms of water.

2. Sanitary sewers are built by choice of the city, following routes selected by the city, and transmit only such waste matter as the city authorizes to be placed therein by connection permits. Surface drainage (such as that in the present case) is not constructed or routed by the city, but is a natural flow of natural rainfall upon the natural surface of the earth.

3. there is no established law of dominance and subservience between upper and lower landowners as to man-created sewage. There is such established law as to surface water.

Plaintiffs' principal argument is that,

"Appellant is legally responsible for the flooding nuisance caused by the collective adverse impact of projects which it approved."

No authority is cited to support this argument, and none has been found by independent research. In spite of the recent propensity of some courts to undertake to supervise and direct the activities of other branches of government, none has yet been so bold as to hold a local government liable for failure to assure that a building project would not injure its neighbors before issuing a permit for construction. To initiate such a rule would make it necessary for every municipality to require indemnity bonds from builders in fantastic amounts before issuing permits for any construction. In short, the cities would thereby be constituted the liability insurers upon each building constructed by permission of the city.

Plaintiffs insist that the defendant assumed responsibility for the efficient function of the subject drainage ditch by clearing debris therefrom. Plaintiffs cite *City of Knoxville v. Hunt*, 156 Tenn. 7, 299 S.W. 789 (1927). That case involved the change in grade of a street in which the city had constructed a sewer and the city had expressly approved the change in grade as actually performed by private interests. The case does not support responsibility of a city for a natural drain upon private property.

Plaintiffs' brief goes into great detail to establish from the record that construction authorized by the defendant did actually produce the excessive surface water which produced plaintiffs' troubles. Even if it be accepted that part of plaintiffs' troubles arise from construction authorized by the city, this does not establish plaintiffs' rights against the city.

In the first place, it is shown that the watershed which drains into the drainage ditch which floods plaintiffs' property is not entirely within the city limits of defendant city and that other construction outside the city also contributed to plaintiffs' troubles. It would be most inappropriate to restrain the city from allowing construction within the city only to leave the remainder of the watershed free to develop unrestricted, to produce whatever flooding might result.

Secondly, it seems most inappropriate, by acting through the city, to impair the usefulness of property now vacant in order to protect the property of plaintiffs from the results of construction already completed on other property. This has the effect of transferring plaintiffs' subservient status to that of upper landowners, that is, reversing the order of subservience as recognized by Tennessee law and of exercising a sort of favoritism in favor of the land already improved and against land not yet improved.

Thirdly, the right of action, if any, for plaintiffs' injuries is directly against those who caused the problem, i. e., the owners of property which is producing the unnatural amount of surface water. This is what occurred in *Davis v. Homemakers, Inc., supra.*

Fourthly, no right of action is recognized against a municipality for issuing a permit for construction in accordance with existing laws and regulations. Correspondingly, there is no authority for the Courts to enjoin the issuance of a permit, otherwise lawful, for the reason that its use might result in a private injury.

Finally, there is no authority for compelling a city to construct an artificial drainage sewer; and it would be a radical, dangerous and undemocratic precedent for the Courts to undertake to enter into municipal legislation and administration in any such respect.

It is the conclusion of this Court that no right of action whatever exists against the city in the present circumstances.

This Court is not unaware of the serious problem facing plaintiffs. It may be, although it is not so held at this time, that plaintiffs have a right of action against all property owners, both within and without the city limits, who have contributed to plaintiffs' flooding problems by changing the absorption characteristics of land above that of plaintiffs. If so, plaintiffs' remedy is against such property owners and *not* against the city.

The decree of the Chancellor is reversed, all relief granted therein is vacated, and plaintiffs' suit is dismissed. The costs of this appeal are adjudged against plaintiffs-appellees.

Reversed and dismissed.

Abridged for publication.

SHRIVER, P. J., and DROWOTA, J., concurs.