*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0356p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

JOHN C. BRIGGS,

>
> *Plaintiff-Appellant,*
>
> *v.*
>
> No. 05-1381
>
> JOHN E. POTTER, Postmaster General, United States
> Postal Service,
>
> *Defendant-Appellee.*

—————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 03-00773—Gordon J. Quist, District Judge.

Argued: June 6, 2006

Decided and Filed: September 15, 2006

Before: MARTIN, MOORE, and ROGERS, Circuit Judges.

—————————

**COUNSEL**

—————————

**ARGUED:** Brent W. Boncher, SCHENK, BONCHER & RYPMA, Grand Rapids, Michigan, for
Appellant. Michael L. Shiparski, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids,
Michigan, for Appellee. **ON BRIEF:** Brent W. Boncher, SCHENK, BONCHER & RYPMA,
Grand Rapids, Michigan, for Appellant. Michael L. Shiparski, ASSISTANT UNITED STATES
ATTORNEY, Grand Rapids, Michigan, Martina M. Stewart, U.S. POSTAL SERVICE, Washington,
D.C., for Appellee.

—————————

**OPINION**

—————————

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant John Briggs brings this age-
and sex-discrimination lawsuit against the United States Postal Service (hereinafter "Postal
Service") after he failed to obtain a promotion to the position of Environmental Compliance
Specialist. Briggs claims that a younger, female employee who was less qualified was awarded the
promotion because of her sex and age in violation of Title VII and 42 U.S.C. § 1981. Defendant-
Appellant the Postal Service argues that Jennifer Jendras, the employee who was promoted instead
of Briggs, was an overall stronger candidate. The Postal Service argues that its legitimate,
nondiscriminatory reasons for promoting Jendras include her greater educational attainment, her
greater years of experience working in an environmentally related field, as well as Briggs's weaker

interview performance. The district court granted summary judgment to the Postal Service, concluding that Briggs had failed to present any direct evidence of discrimination or to demonstrate pretext under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Briggs now appeals, arguing that he has established genuine issues of material fact that preclude a grant of summary judgment to the Postal Service. For the reasons explained below, we **AFFIRM** the district court's grant of summary judgment to the Postal Service on both Briggs's age- and sex-discrimination claims.

## I. BACKGROUND

Unless otherwise noted, the following facts are undisputed. Plaintiff-Appellant Briggs has worked in Michigan for the Postal Service in a variety of positions since 1975. Joint Appendix ("J.A.") at 73-76 (Briggs Dep. at 6-9). Briggs began working on environmental issues in December 1995, when he was promoted to the position of District Environmental Compliance Coordinator ("DECC") in Grand Rapids, Michigan. As a DECC, Briggs was at an Executive and Administrative Schedule ("EAS") pay grade of 19. J.A. at 97 (Briggs Dep. at 30). In 2001, the Postal Service engaged in a national reorganization which reduced the number of environmental compliance positions. J.A. at 97-98 (Briggs Dep. at 30-31). As part of this reorganization, the seven DECC positions that existed in the Great Lakes Area, consisting of the states of Michigan, Illinois, and Indiana, were eliminated and replaced with four Environmental Compliance Specialists ("ECS") for the region. The job postings released in June 2001 for the new ECS positions stated that only the existing DECCs were eligible to apply for the ECS positions, which meant that the pool of applicants was limited to Briggs and the six other DECCs in the Great Lakes. The ECS positions would be compensated at the EAS-23 pay grade. Two of the new ECS positions would be located in Detroit, one would be in Chicago, and one in Indianapolis.

Because Briggs was the DECC working in district farthest from the locations of the new ECS positions and his home was not a commutable distance to any of the ECS positions, he would have needed to relocate his family if he were to be selected for an ECS position. (Briggs Dep. at 36). Before applications for the ECS positions were being accepted, Briggs contacted Phillip Pickard by telephone to discuss his concerns about the need to relocate. Pickard held the title of Manager of Environmental Programs, would be supervising those who would be selecting the new ECS positions, and was one of Briggs's functional managers. Briggs questioned Pickard over the telephone about why the two new ECS positions in Michigan were to be located on the east side of the state rather than on the west side where Briggs worked as a DECC. Pickard explained that the Postal Service faced a greater likelihood of environmental fines and citations on the east side of the Michigan. Briggs responded that he didn't think that it was fair that he was the only DECC who would have to relocate in order to be eligible for an ECS position. Briggs reports that Pickard responded, "Well, based on your background and experience . . . [y]ou're very well qualified; you won't have a problem finding a job someplace else." J.A. at 111 (Briggs Dep. at 44). Confused by this response, Briggs asked Pickard what he meant by that statement. Pickard replied, "Well, there are other DECCs who have much less time than you do in the postal service and would have a lot harder time finding a residual position if they weren't one of the successful bidders [for the ECS positions]." *Id*. Briggs expressed his concern that Pickard's statements suggested that the decision-makers had already begun to consider whom to place in the various ECS positions, and then ended the phone conversation.

After considering the relocation, Briggs decided he would be willing to move to Detroit or Chicago, and so he applied for those three ECS positions. In June 2001, Briggs submitted written applications for these three positions, along with the required "KSA" essays to demonstrate that he possessed the necessary knowledge, skills, and abilities for the ECS position. Towards the end of July 2001, Briggs and the other ECS applicants were asked to come to the Postal Service's area office in Bloomingdale, Illinois to interview with Pickard and the review board. Judy Wingo-

Stalinger, an Area Environmental Compliance Specialist and a functional manager of Briggs and the other DECCs, was the chairperson of the ECS selection review committee. After the interviews, the review committee issued recommendations about the ECS candidates to Pickard, and Briggs was not one of the four recommended candidates. Pickard was not obligated to follow the recommendations of the review board, but because he agreed with their choices, he approved their four recommended candidates for the four ECS positions. Out of the seven applicants, six were men and one, Jennifer Jendras, was a woman. Five of the seven applicants including Briggs were over the age of forty, and two including Jendras were in their thirties. Jendras was chosen for the Chicago position, and the two Michigan and the Indianapolis positions were offered to male employees in their forties. After Briggs was not selected for the ECS position, he worked for a few months as a Manager of Retail Sales before becoming a Manager of Injury Compensation. Both of these positions were at the EAS-19 pay grade. In December 2003, Briggs was promoted to the position of Manager of Vehicle Maintenance for the Greater Michigan district, compensated at the EAS-21 pay grade.

On October 23, 2003, Briggs filed this lawsuit against the Postal Service, alleging that he was denied the promotion to the ECS position in favor of Jendras because of his age and sex in violation of Title VII and 42 U.S.C. § 1981. Discovery ensued, and on December 10, 2004, the Postal Service filed a motion for summary judgment, alleging that there were no genuine issues of material fact and that defendant was entitled to judgment as a matter of law on all of Briggs's claims. Briggs opposed the motion, arguing that under a theory of either direct or indirect evidence of discrimination, he had established genuine issues of material fact on his age and sex claims that required submission to a jury. In an opinion dated March 1, 2005, the district court granted summary judgment to defendant after it determined that Briggs had not established any genuine issues of fact about whether the Postal Service's asserted reason for hiring Jendras, that she was an overall superior candidate, was a pretext for discrimination. The district court also rejected portions of Briggs's affidavit for consideration at the summary-judgment stage, because the court found that the statements were assertions of argument rather than of fact, and were inconsistent with his previous deposition. The court then rejected Briggs's claim that Pickard's conversation with him in June 2001 constituted direct evidence of age or sex discrimination. Finally, the district court granted judgment as a matter of law to defendant on Briggs's § 1981 claim. The district court dismissed Briggs's claims with prejudice, and Briggs filed a timely notice of appeal.

## II. ANALYSIS

"We review de novo the district court's grant of summary judgment." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998). The district court's grant of summary judgment to the Postal Service was proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute over a material fact is not considered 'genuine' unless a reasonable jury could return a verdict for the nonmoving party." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544 (6th Cir. 2003).

### A. The District Court's Refusal to Consider Portions of Briggs's Affidavit

As a preliminary matter, we review the district court's refusal to consider a portion of Briggs's affidavit, which Briggs submitted as an appendix to his motion in opposition to the Postal Service's motion for summary judgment, when the district court was considering the summary-judgment motion. As this decision was an evidentiary ruling, we review the district court's refusal to consider a portion of Briggs's affidavit for an abuse of discretion. *Aerel, S.R.L., v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006). "A district court abuses its discretion when it relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard

when reaching a conclusion, or makes a clear error of judgment." *Id*. (internal quotation marks omitted).

Briggs argues that Pickard's statements to him over the telephone in June 2001 made before applications for the ECS positions were even being accepted constitute direct evidence that unlawful age and sex discrimination motivated the ECS promotion decision. At oral argument, Briggs argued that Pickard's statements indicate that Pickard had preselected the ultimately successful candidates before the formal ECS selection process began, and that this constitutes direct evidence of age and sex discrimination, or in the alternative, evidence of pretext under the *McDonnell Douglas* burden-shifting framework. Briggs first recounted Pickard's alleged June 2001 statements in his deposition, and then later in greater detail in his affidavit. In his deposition, Briggs stated that, during the June 2001 conversation with Pickard, Briggs expressed his unhappiness to Pickard that Briggs was the only DECC who would have to move in order to take one of the new ECS positions. In response, Briggs stated that Pickard said, "Well, based on your background and experience . . . [y]ou're very well qualified; you won't have a problem finding a job someplace else." J.A. at 111 (Briggs Dep. at 44). Briggs then testified that he asked Pickard what he meant by that response, to which Briggs testified that Pickard said, "Well, there are other DECCs who have much less time than you do in the postal service and would have a lot harder time finding a residual position if they weren't one of the successful bidders [for an ECS position]." *Id*. In his subsequent affidavit, Briggs stated that during his June 2001 phone conversation with Pickard:

> ¶ 19    Mr Pickard told affiant that affiant would not have a problem finding another job [within the Postal Service], whereas the less-qualified and less-experienced selected candidates, including Jennifer Jendras, would have a more difficult time finding alternative positions within the Postal Service due to their limited knowledge and experience in Postal operations.

> ¶ 20    In other words, Mr. Pickard all but advised that despite his superior qualifications, affiant was not going to be promoted.

J.A. at 314 (Briggs Aff. at ¶¶ 19-20) (alterations in original).

The district court refused to consider both the statement in the affidavit about Jendras and the other subsequently selected candidates as being less qualified than Briggs and the sentence in ¶ 20 of the affidavit because it concluded that these statements "are lawyer argument rather than statements of fact to be considered in determining whether this case should go forward." J.A. at 520 (Dist. Ct. Op. at 6). The district court properly relied upon Federal Rule of Civil Procedure 56(e), which states that supporting affidavits "shall be made on personal knowledge," and "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." We firmly agree with the district court's decision to strike ¶ 20 of the affidavit, because this portion was on its face explicitly *not* a reflection of fact but rather an argumentative interpretation of statements of fact from the June 2001 telephone conversation, as evidenced by the terms "[i]n other words," and "all but advised." Striking ¶ 20 of Briggs's affidavit was proper under Rule 56(e) and therefore was not an abuse of discretion.

Whether the district court's decision to strike the description of Jendras as less qualified than Briggs and other more senior, non-selected ECS candidates was an abuse of discretion is a closer question. The district court concluded that this statement was inconsistent with the earlier deposition and therefore inappropriate for consideration at the summary-judgment stage under *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (stating that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony"). J.A. at 520-51 (Dist. Ct. Op. at 6-7). The district court therefore relied upon the principle that Briggs's failure to mention such a material piece of

evidence when asked about the June 2001 telephone conversation during the deposition was akin to admitting at the deposition that such evidence did not exist. The district court reasoned that Briggs's subsequent statement that the material piece of evidence did exist was therefore contradictory. The district court also stated, "It is inconceivable to this court that, if Pickard had actually said that Jendras was less qualified than Briggs, Briggs would not have mentioned this fact during his deposition." *Id.*

In these circumstances, we conclude that the district court's refusal to consider the affidavit's description of Jendras and the other subsequently selected ECS candidates as less qualified was an abuse of discretion for two reasons. First, the district court essentially stated that it did not believe that Pickard had actually called Jendras less qualified, and it appears that this disbelief factored into the district court's admissibility determination. This adverse determination against Briggs as the nonmoving party is inconsistent with the district court's obligation to view the evidence in the light most favorable to Briggs. The Supreme Court explains:

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [the judge] is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). *See also Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) ("In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.").

Second, our most recent precedent on whether or not a subsequent affidavit is "contradictory" to a previous deposition for the purposes of admissibility at the summary-judgment stage clarifies a relatively narrow definition of a contradiction. In *Aerel*, we declined to extend the *Reid* rule barring the admission of contradictory affidavits to bar "a party who was not directly questioned about an issue [at deposition] from supplementing incomplete deposition testimony with a sworn affidavit." 488 F.3d at 907. We reasoned:

> Such an affidavit fills a gap left open by the moving party and thus provides the district court with more information, rather than less, at the crucial summary judgment stage. Because the deponent is under no obligation to volunteer information not fairly sought by the questioner, we see no reason to apply *Reid* and its progeny to such a situation.

*Id.* While Briggs was questioned generally about that June 2001 conversation, he was not expressly asked what Pickard had said to him during that conversation. As Briggs was not under any obligation to volunteer everything Pickard said during that conversation, he should not be prevented from providing greater detail in a later affidavit. With the benefit of our reasoning *Aerel*,[1] we conclude that the district court did abuse its discretion excluding the reference in Briggs's affidavit to the ECS candidates who were eventually selected as being less qualified than Briggs. Nevertheless, for the reasons explained below, even when considering this additional phrase of Briggs's affidavit, we conclude that Briggs has been unable to show the existence of any genuine issue of material fact on either his age- or sex-discrimination claims.

---

[1]As *Aerel* was not decided until May 2006, the district court did not have the benefit of the decision when deciding this issue.

## B.  Briggs's Age-Discrimination Claim

Briggs argues that this court should reverse the district court's dismissal of his age-discrimination claim[2] because he has demonstrated genuine issues of material fact under both a direct-evidence theory and a burden-shifting theory of discrimination.  Briggs is correct that he can establish age discrimination either by presenting direct evidence of discrimination or by proceeding under *McDonnell Douglas*'s burden-shifting framework.  *See Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548-49 (6th Cir. 2004).  "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Wexler v. White's Fine Furniture, Inc*. 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (internal quotation marks omitted).  In order to establish a prima facie case of age discrimination relying upon indirect evidence of discrimination under the burden-shifting framework, Briggs must establish "that:  (1) he is a member of the protected class, that is, he is at least forty years of age; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently from similarly situated employees outside the protected class."  *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004).  Once Briggs establishes a prima facie case of age discrimination, the burden shifts to the Postal Service to articulate a legitimate, nondiscriminatory reason for the adverse action.  *Rowan*, 360 F.3d at 547.  "If they do so, the burden shifts back to [Briggs], who must establish that the legitimate reasons offered by the defendant were just a pretext for decisions actually motivated by an unlawful bias against age."  *Id*.  Upon review of the record, we agree with the district court that Briggs has failed to defeat the Postal Service's motion for summary judgment using either theory of age discrimination.

Briggs argues that Pickard's alleged statement made to him over the telephone in June 2001 is direct evidence that younger candidates were selected for the ECS positions because of their age.  We disagree.   As recounted in both Briggs's deposition and affidavit, Pickard's statements suggesting that he may have preselected ECS candidates based upon a consideration of whether the remaining unselected candidates could be otherwise placed within the Postal Service do not constitute direct evidence of age discrimination.  Even when viewed in the light most favorable to Briggs, the statements do not refer to the subsequently selected candidates' ages, but rather to their years of service, which the Supreme Court has stated is an analytically distinct factor from age.  *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) ("Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'").  Briggs has been unable to present any direct evidence that the Postal Service failed to promote him to the position of ECS because of his age.

Briggs also argues that he has established a prima facie case of age discrimination based upon indirect evidence, and the Postal Service does not dispute that he has established a prima facie case.   The Postal Service argues, however, that it gave Jendras the ECS position for the

---

[2]Briggs incorrectly but adamantly alleges age discrimination in violation of Title VII, rather than the Age Discrimination in Employment Act ("ADEA").  J.A. at 11-12 (Complaint at ¶ 27); Appellant Reply Br. at 15 (attempting to distinguish his case from that in *Hazen Paper Company v. Biggins*, 507 U.S. 604 (1993), on the grounds that *Biggins*, unlike his case, is an age-discrimination case brought under the ADEA).   Title VII provides protection from discrimination on the basis of race, color, religion, sex, or national origin, but does not provide protection from age discrimination. 42 U.S.C. § 2000-e2 *et seq.*  The ADEA, 29 U.S.C. § 621 *et seq.*, is the federal statute that prohibits age discrimination, and the ADEA does prohibit age discrimination against federal government employees.  *See* 29 U.S.C. § 633a.  The district court did not correct Briggs's confusion about the scope of Title VII nor did the court refer to the ADEA other than a few citations to ADEA cases.  The Postal Service draws attention to the fact that Briggs did not bring an ADEA claim, but proceeds to argue that, even if the court treats his age-discrimination claim as an ADEA claim, Briggs has still failed to defeat defendant's motion for summary judgment.  Appellee Br. at 14-17.  Similarly, we will proceed to treat Briggs's age-discrimination claim as though it were properly brought under the ADEA.

nondiscriminatory reasons that Jendras was a better overall candidate in terms of experience and education and that Briggs performed poorly during his interview. Appellee Br. at 14. The district court accepted these nondiscriminatory reasons for promoting Jendras, and concluded that Briggs failed to demonstrate that they were pretextual.

Briggs may show that the Postal Service's articulated reasons for hiring Jendras were a pretext for illegal discrimination in three ways. "To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate [the adverse employment action], or (3) that they were *insufficient* to motivate [the adverse employment action]." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (emphases in original) (internal quotation marks omitted). The district court considered all three methods of proving pretext, and concluded that Briggs had failed to prove any of the three. Upon review, we agree with the district court's conclusion.

First, the district court was correct in concluding that Jendras's higher educational attainment and her greater experience in environmental compliance are such that Briggs has not shown that the proffered reason of her overall stronger candidacy had no basis in fact. *See, e.g., Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 617 (6th Cir. 2003) (finding no genuine issue of material fact as to pretext when plaintiff, who had more years of experience, had less extensive educational background than promoted employee). The undisputed facts show that Jendras had a more extensive educational background and had more years of experience in environmental compliance. While Briggs has a bachelor's degree in business administration and no graduate degree, Jendras has a bachelor's degree in environmental health and safety, as well as an MBA and a Master's degree in Public Health. Jendras has also worked in environmental-related positions since at least 1990, whereas Briggs has only worked in an environmental-related position since December 1995.

Briggs has also failed to show that Jendras's greater experience and education and Briggs's poor interview did not actually motivate the Postal Service's decision. Although at first blush Pickard's June 2001 telephone conversation with Briggs might appear to provide evidence of pretext about Pickard's actual motivation, the timing of the statement in relation to the selection process negates any pretextual inference. Even assuming this statement was made exactly as Briggs recounts — with Pickard indicating that he thought Jendras was less qualified and less experienced, but that she would be harder to place in a residual position because of her fewer years of service with the Postal Service — Pickard made this statement before he and the review board had a chance to compare Jendras and Briggs as ECS candidates, either on paper or through the interview process. After the written and interview process, Pickard felt that Jendras's "overall interview performance, her education, [and] her experience" made her a superior candidate for the Chicago ECS position compared to Briggs. J.A. at 245 (Pickard Dep. at 19). Pickard recounted, and Briggs does not dispute, that Briggs's "interview went very poorly actually." J.A. at 239 (Pickard Dep. at 13). Review board chairperson Wingo-Stalinger stated that she "primarily used the results of the interview" to determine which candidates best met the requirements of each ECS position, and that she weighted the interview at about 75% of her assessment of the candidates. J.A. at 174, 177 (Wingo-Stalinger Dep. at 25, 28). Under these circumstances, Briggs does not present sufficient evidence such that a reasonable jury could conclude that the Postal Service's articulated nondiscriminatory reason was not its actual motivation in promoting Jendras.

Finally, Briggs has been unable to create a genuine issue of material fact as to pretext by showing that Jendras's greater educational and environmental experience and his poor interview were insufficient to motivate the Postal Service to promote Jendras over him. The uncontroverted evidence shows that Pickard and the review board viewed Jendras as a better fit for the ECS position because of her greater education and experience and her more successful interview.

Briggs places a great deal of emphasis upon two points, which he alleges constitute evidence of pretext. First, Briggs argues that the Postal Service deviated from several policies and standard procedures in the ECS selection process. Appellant Br. at 19. However Briggs himself admits that this environmental compliance reorganization process had to occur "in a very short time frame." J.A. at 106 (Briggs Dep. at 39). The Postal Service has offered reasonable explanations for any minor deviations from established procedure, *see* Appellee Br. at 26-30, and Briggs has not explained how any of these alleged procedural irregularities prejudiced him in the selection process or indicate "any dishonesty or bad faith" on behalf of the Postal Service. *Williams v. Columbus Metro. Hous. Auth.*, 90 F. App'x 870, 876 (6th Cir. 2004) (unpublished opinion). "[T]he inconsistencies cited by [Briggs] relate entirely to matters of process and have no bearing on [defendant's] reasons for not promoting [him]." *Id.* at 877. Briggs also repeatedly asserts that he believes that he was more qualified than Jendras, primarily because he had worked for the Postal Service longer and because he felt his answers to the "KSA's" were objectively superior to hers. Appellant Br. at 35. Briggs's "subjective view of [his] qualifications in relation to those of the other applicants, without more, cannot sustain a claim of discrimination." *Hendrick v. Western Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004). Briggs has not produced evidence such that a reasonable jury could conclude that the Postal Service's proffered reasons for hiring Jendras constituted a pretext for illegal age discrimination, and so we affirm the district court's grant of summary judgment to the Postal Service on Briggs's age-discrimination claim.

## C. Briggs's Sex-Discrimination Claim

The district court also granted summary judgment to the Postal Service on Briggs's sex-discrimination claim. Upon review, Briggs's sex-discrimination claim is much more precarious than his claim of age discrimination. Briggs presents no direct evidence that Jendras was selected because she is female, but he merely states repeatedly without the support of *any* evidence that it is his opinion that "[f]emales are regularly favored for promotion at the Postal Service as a matter of course and unwritten policy." J.A. at 10 (Complaint at ¶ 20); Appellant Br. at 8. As for Briggs's attempt to prove his sex-discrimination claim under the *McDonnell Douglas* burden-shifting approach, that too cannot survive the Postal Service's motion for summary judgment.

Both parties and the district court failed to identify Briggs's sex-discrimination claim as a reverse-discrimination claim. A reverse-discrimination claim carries a different and more difficult prima facie burden. A plaintiff in a reverse-discrimination claim has established a prima facie case upon showing that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority . . . and upon a showing that the employer treated differently employees who were similarly situated but not members of the protected group." *Yeager v. Gen. Motors Corp.*, 265 F.3d 389, 397 (6th Cir. 2001) (internal quotation marks omitted); *see also Sutherland*, 344 F.3d at 614. Briggs has not produced a shred of evidence that the Postal Service is the unusual employer who discriminates against men. Furthermore, the "background circumstances" that only one DECC out of seven was female and relatedly, that the three other DECCs promoted to ECS were male, strongly suggest that the Postal Service does not discriminate against men. Briggs has failed to make a prima facie showing of reverse sex discrimination. We affirm the district court's grant of summary judgment to the Postal Service on Briggs's sex-discrimination claim.

## D. Briggs's § 1981 Claim

Finally, we conclude that the district court correctly dismissed as a matter of law Briggs's claim of age discrimination in violation of 42 U.S.C. § 1981. J.A. at 530 (Dist. Ct. Op. at 16). Although the district court did not address Briggs's sex-discrimination claim under § 1981, that claim also fails as a matter of law for the same reasons. Federal employees must rely upon Title VII and other federal antidiscrimination statutes like the ADEA that apply to the federal government as

the exclusive remedy for combating illegal job discrimination.  "In amending Title VII [and other federal statutes] to include federal employees, Congress created an exclusive judicial remedy for claims of discrimination in federal employment." *Davis v. Runyon*, No.96-4400, 1998 WL 96558, at \*5 (6th Cir. Feb. 23, 1998) (internal quotation marks omitted) (unpublished opinion). *See also Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) (holding that a federal employee alleging race discrimination under Title VII and 42 U.S.C. § 1981 may only pursue redress under Title VII).

## III.  CONCLUSION

As Briggs has failed to create any genuine issues of material fact on either his age- or sex-discrimination claims and his 42 U.S.C.§ 1981 claims fail as a matter of law, we **AFFIRM** the district court's grant of summary judgment to the Postal Service.