**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0612n.06

**Nos. 09-6367/10-5362**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>

1704 FARMINGTON, LLC,<br>
1711 FARMINGTON LLC, and<br>
1685 FARMINGTON LLC,<br><br>

    Plaintiffs-Appellants,<br><br>

v.<br><br>

CITY OF MEMPHIS, TENNESSEE,<br><br>

    Defendant-Appellee.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

<br><br><br><br>
ON APPEAL FROM THE<br>
UNITED STATES DISTRICT<br>
COURT FOR THE WESTERN<br>
DISTRICT OF TENNESSEE

</td></tr>
</table>

**FILED**

*Aug 24, 2011*

LEONARD GREEN, Clerk

---

**BEFORE: COLE and WHITE, Circuit Judges; O'MEARA, District Judge.**[*]

    **JOHN CORBETT O'MEARA, District Judge.** Plaintiffs/Appellants, 1704 Farmington LLC, 1711 Farmington LLC, and 1685 Farmington LLC ("Property Owners") own the Ridgeway Commons apartment complex in Memphis, Tennessee. Property Owners filed this suit against the City of Memphis, seeking abatement of a common law nuisance. Essentially, Property Owners contend that the City has not properly maintained a drainage ditch adjacent to Ridgeway Commons, which has flooded three times in the past ten years. The district court ruled that Property Owners failed to establish the elements of a prima facie case of nuisance and granted summary judgment in favor of the City. Property Owners then filed this appeal as well as a separate, subsequent appeal

---

    [*]The Honorable John Corbett O'Meara, United States District Court for the Eastern District of Michigan, sitting by designation.

of the district court's award of costs in favor of the City. For the reasons stated below, we **AFFIRM.**

**I.**

The drainage ditch at issue is a concrete-lined channel adjacent to the Ridgeway Commons apartment complex and intersecting Quince Road in Memphis. The ditch was constructed in sections at different times. The majority of the ditch was designed and constructed in the late 1960s and early 1970s by J & L Development Company, which also developed the Ridgeway Commons apartment complex. The box culvert under Quince Road was originally installed by Shelby County, but that area was subsequently annexed by the City. The City accepted an easement over the drainage ditch in 1972, including the responsibility to maintain it.

At the time the drainage ditch was constructed, the City's design criteria for the construction of a concrete channel included a two cubic feet per second per acre requirement for watershed, which means a flow rate for water drainage equal to at least two cubic feet per second. In April 1987, the City adopted a Drainage Manual that requires concrete drainage ditches to accommodate a "25-year flood event." The City did not require drainage systems built prior to 1987 to be updated to increase their capacity because it was not economically feasible to do so.

The City does maintain the drainage ditch by keeping the channel intact, keeping obstructions out of the channel, keeping the safety fence intact, and repairing damage to the channel. Property Owners do not allege a problem with flooding at the Ridgeway Commons from the time it was constructed until 1999. After that, the area experienced flooding in 1999, March 2004 and July

2005. About a week prior to the July 2005 flood, the City cleaned out the drainage ditch at the request of Property Owners.

The City contends that it does not guarantee that the property adjacent to a drainage ditch will never experience flooding. Some storms are so severe that they cause flooding even when an adequately designed and constructed drainage system is in place.

The portion of the Property Owners' property directly adjacent to the drainage ditch is lower than the elevation of the top wall of the ditch. A developer typically fills the land being developed to the top of such a wall and then develops up from that point to avoid flooding. This was not done at Ridgeway Commons, where the developer apparently developed the property below the elevation of the top of the channel wall. In addition, some water intake inlets on the property are lower than the top of the channel walls, and one has been paved over. The City contends that the lowness of Plaintiff's property and the inlets on that property, relative to the height of the drainage ditch, cause the drainage system to not function properly during heavy rains. As the water in the channel rises, water backs up through the low inlets in the property, so the water that is running downhill toward the ditch has nowhere to go, and the low areas on the property act like a detention system. The City contends that Plaintiffs could have re-graded their property or constructed a drainage system to prevent flooding, but chose not to do so.

Property Owners contend that the elevation of their property and the fact that an inlet is covered are not the causes of the flooding. Rather, Plaintiffs' expert, Guy Forney, has opined that the property floods "as a result of the drainage ditch's inability to operate as it was intended, i.e.,

carry upstream water runoff and runoff from Plaintiffs' property downstream under Quince Road."

R.E. 64 (Order Granting Defendant's Motion for Summary Judgment) at 12. In other words, Property Owners contend that the drainage ditch lacks sufficient capacity, as a result of increased development of properties upstream from Ridgeway Commons. *See* R.E. 36-2 (Affidavit of Guy Forney) at ¶ 20 ("[U]pstream development has caused the level of flood protection at the apartment complex to drop from a 100-year frequency to a 10-year frequency.").

## II.

### A.    Standard of Review

Property Owners argue that the district court should have applied the summary judgment standard articulated by the Tennessee Supreme Court in *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1 (Tenn. 2008), and that the failure to do so deprived them of their constitutional right to the benefits of state law. Property Owners' argument is without merit. The standard for summary judgment is a procedural issue that is governed by federal law in diversity cases. *Shropshire v. Laidlaw Transit, Inc.*, 550 F.3d 570, 573-74 (6th Cir. 2008). Notwithstanding Property Owners' arguments to the contrary, *Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 130 S.Ct. 1431 (2010) does not change this rule.

This court reviews a grant of summary judgment *de novo*. *See, e.g., Briggs v. Potter*, 463 F.3d 507, 511 (6th Cir. 2006). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences

drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).[1]

The court reviews evidentiary issues, such as the district court's refusal to consider an affidavit, for an abuse of discretion. *Briggs*, 463 F.3d at 511. "A district court abuses its discretion when it relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Id*. (citation omitted).

**B.      Evidentiary Issues**

Property Owners complain that the district court excluded certain of Plaintiffs' evidence in considering the City's motion for summary judgment: (1) Plaintiffs' Statement of Undisputed Facts; (2) Guy Forney's testimony; and (3) Frank Palumbo's testimony. For the reasons stated below, this court finds that the district court did not abuse its discretion.

---

[1]Relying on *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000), Property Owners argue that the court must disregard testimony submitted by a movant from an interested witness, even if that testimony is not impeached or contradicted. Although evidence presented by the movant that is impeached or contradicted must be disregarded for the purposes of summary judgment, the standard does not require the court to disregard testimony merely because it is provided by an interested witness. *See*, *e.g.*, *Stratienko v. Cordis Corp.*, 429 F.3d 592, 597-98 (6th Cir. 2005); *Fogerty v. MGM Group Holdings Corp.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

### 1.     Exclusion of Plaintiffs' Statement of Undisputed Facts

The district court did not rely upon Plaintiffs' Statement of Undisputed Facts because it was filed contrary to the local rules.  Local Rule 7.2(d) provides that a non-moving party may respond to the movant's statement of undisputed facts "by attaching to the response, the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue."  The district court noted that "a non-movant is not afforded the opportunity of filing its own additional facts unless, of course, the non-movant wishes to file its own motion for summary judgment.  Therefore, on a motion for summary judgment, the Court looks only to the movant's statement of facts and the non-movant's response to those facts per the procedure established by Local Rule 7.2(d)(3)."  R.E. 64 at 1 n.1.

Property Owners argue that the district court elevated form over substance by excluding their statement of facts.  Property Owners have not, however, identified facts that were excluded by the district court which would command a different disposition of the case.  Further, Property Owners did file a response to the City's statement of undisputed facts, which was considered by the district court.  Property Owners have not articulated how they have been prejudiced by the exclusion of their improperly filed statement of facts.

### 2.     Testimony of Guy Forney

Property Owners contend that the district court disregarded the expert testimony of Guy Forney.  However, the district court did not exclude Forney's testimony and, in fact, referenced it several times in its opinion.  *See* R.E. 64 at 4, 5, 7, 12.  Property Owners contend that the district

court "deemed the testimony of Forney to be without credence, even though the district court acknowledged Forney's testimony was in contradiction to undisinterested [sic] testimony of City." Appellants' Br. at 59. Property Owners have not explained how the district court "deemed" the testimony to be "without credence," let alone how this resulted in error. For example, Property Owners do not explain which parts of Forney's testimony, if properly considered by the district court, would mandate a different outcome in this case.

### 3. Exclusion of Testimony of Frank Palumbo

The district court excluded the expert testimony of Frank Palumbo because Plaintiffs did not timely disclose his testimony. Property Owners complain that the district court also improperly excluded "fact" evidence presented by Palumbo. Property Owners explain that Palumbo designed the drainage ditch and later became the City's Engineer and Director of Public Works. They contend that the district court should have considered Palumbo's testimony "concerning what was encompassed in the obligation of City to 'maintain' the drainage ditch that Palumbo designed." Appellants' Br. at 60.

The City responds that Palumbo's testimony is based upon technical or specialized knowledge gained through his experience, training and/or education, and is therefore not "fact" testimony, but opinion testimony under Fed. R. Evid. 702. The court agrees that Palumbo's testimony falls within the scope of Fed. R. Evid. 702. Further, the admission of Palumbo's testimony would not change the result in this case, as discussed below.

C.      **Nuisance Claim**

In its summary judgment motion, the City argued that it was entitled to judgment as a matter of law because it is immune from suit under the Governmental Tort Liabilities Act ("GTLA"). *See* Tenn. Code Ann. § 29-20-201. The City also argued that it did not create a nuisance as a matter of law. The district court agreed that Property Owners could not establish a nuisance claim as a matter of law and did not reach the City's GTLA argument.

It is undisputed that Tennessee law applies in this diversity action. Under Tennessee law, "a nuisance extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property." *Paduch v. City of Johnson City*, 896 S.W.2d. 767, 770 (Tenn. 1995) (quoting *Pate v. City of Martin*, 614 S.W.2d 46, 47 (Tenn. 1981)). "The cases in Tennessee considering municipal liability for nuisance establish the following requirements: an inherently dangerous condition and affirmative action on the part of the municipality. Both elements must be established before a nuisance can be found and the distinction must be preserved between negligence, and omission of duty, and a nuisance, or active wrong." *Id.* at 771 (quoting *Dean v. Bays Mountain Park Ass'n*, 551 S.W.2d 702, 704 (Tenn. Ct. App. 1977)) (internal quotation marks and citations omitted).

The district court concluded that the Property Owners failed to demonstrate that the City took some affirmative act to create or maintain a nuisance. The court noted that the City did not plan, design, or construct the ditch, which was constructed by a private developer who later dedicated an easement to the City for maintenance. There is also no evidence that the ditch itself is "defective"

or that the City failed to maintain it or keep it functioning. Indeed, there is no evidence that the ditch "malfunctioned" from the time of its construction in the late 1960s until 1999. The court found that the "real issue in this case is not whether the City has created or maintained a 'malfunctioning' channel but whether the City should be liable for the increase in storm water that periodically fills the channel and causes flooding on Plaintiffs' property." R.E. 64 at 17. The City has not contributed to the increase in storm water; rather, Plaintiffs admit that upstream development has caused increased runoff. In essence, Property Owners "allege that the City has failed to improve the ditch to keep pace with new development so that the ditch can carry greater volumes of storm water without flooding Plaintiffs' property. . . . Plaintiffs in essence ask the Court to order the City to [redesign] the channel so that it can handle greater capacity." *Id.* at 19. The court found no authority for ordering such relief.

Property Owners contend that the district court erred by not following two unpublished Court of Appeals of Tennessee decisions, *Rucker v. Metropolitan Govt. of Nashville*, 1990 WL 182275 (Tenn. Ct. App. Nov. 28, 1990) and *Morris v. City of Memphis*, 1995 WL 72539 (Tenn. Ct. App. Feb. 22, 1995), which they believe mandate a decision in their favor. In *Morris*, the plaintiffs' home was damaged when their subdivision flooded. After a bench trial, the trial court found that the flooding was caused by a defective and dangerous sewer system. When the subdivision's drainage system was installed in 1974, it did not meet the design criteria in effect at the time. The drainage requirements became more stringent in 1986. The City annexed the property in 1990, taking "under its jurisdiction the defective and possibly dangerous sewer system." *Morris*, 1995 WL 72539 at *4.

There was evidence that the subdivision had "continual problems with inadequate drainage since about 1985." *Id.* The court found that the City "certainly should have known that the condition of the sewer did not comply with the drainage requirements in effect at the time of annexation." *Id.* The court found that the City allowed a temporary nuisance to persist and issued a mandatory injunction to abate the nuisance.

The district court found *Morris* "unpersuasive and factually distinguishable from the case at bar." R.E. 64 at 15. Unlike the sewer system in *Morris*, the drainage ditch here complied with the required design criteria at the time it was constructed and at the time the City obtained the easement. The sewer system in *Morris* never functioned properly, while "there is no evidence that the drainage ditch [in this case] is or ever was defective in the same way that the sewer system in *Morris* was." *Id.* at 16. Further, although the City increased the drainage requirements for new channels in 1987, it did not apply those requirements to existing infrastructure. Thus, the drainage ditch here does not fail to comply with the design criteria applicable to it, whereas the sewer system in *Morris* did not comply with the applicable design criteria at the time it was built or the more stringent standards imposed in 1986. In addition, it appears that the City negligently maintained the sewer system in *Morris*, whereas there is no evidence that the City negligently maintained the drainage ditch here.

Perhaps more important, the court in *Morris* did not analyze whether the plaintiffs stated a prima facie case of nuisance by demonstrating that the City undertook an "affirmative act" or "active wrong" to create the nuisance. *See Morris*, 1995 WL 72539 at *4. Contrary to Plaintiffs' argument, *Morris* does not necessarily stand for the proposition that the annexation of a defective drainage

system or the failure to "maintain" it are sufficient "affirmative acts" that render a municipality liable for creating a nuisance; this issue was simply never addressed. As the Tennessee Supreme Court has made clear, "the distinction must be preserved between negligence, and omission of duty, and a nuisance, or active wrong." *Paduch*, 896 S.W.2d. at 771. The failure to upgrade a drainage ditch, which is the essence of Plaintiffs' claim, falls into the category of negligence rather than nuisance. *Morris* does not speak to this issue.

Plaintiffs also contend that the district court should have followed *Rucker v. Metropolitan Govt. of Nashville*, 1990 WL 182275 (Tenn. Ct. App. Nov. 28, 1990). In *Rucker*, the municipality was found liable for negligence in a wrongful death action when a motorist drowned in her car after the road flooded. The drainage system in the area was found to be "defectively designed, structurally unsound and inadequate." *Id.* at *2. Despite addressing a similar subject matter – drainage systems – *Rucker* is inapplicable here. *Rucker* is a wrongful death case in which the City's negligence was at issue. Here, Plaintiffs' claim is for nuisance, not negligence. *Rucker* did not address in any way whether the defective drainage system constituted a nuisance. Accordingly, it is inapposite. The district court did not err in declining to follow *Rucker* or *Morris*.

The district court found *Britton v. Claiborne County*, 898 S.W.2d 220 (Tenn. Ct. App. 1995) and *Miller v. City of Brentwood*, 548 S.W.2d 878 (Tenn. Ct. App. 1977) to be more pertinent to this case. In *Britton*, the plaintiff's property fronted a county road. The plaintiff never had water runoff flood her property, which was lower than the road, until a nursing home and other homes were constructed on the property across the street. The property owner across the road filled in a natural

-11-

ditch, causing flooding on the plaintiff's property every time it rained. The plaintiff sued the county for failing to maintain the road and ditch in a safe condition. The court found that the county was not liable because it never had maintained the natural ditch and because the was no proof that the road itself was defective or dangerous. The court noted that the county did not cause or contribute to the water runoff and stated that "where property owners are damaged by natural water runoff created by private individuals or entities, their recourse is against those creating the runoff – not against the county or municipality." *Britton*, 898 S.W.2d at 223-24 (citing *Miller*, 548 S.W.2d at 883). *See also Miller*, 548 S.W.2d at 882-83 (city not liable for upstream construction that resulted in more surface water runoff on the plaintiff's property; plaintiff's cause of action is against "the owners of property which is producing the unnatural amount of surface water").

As the district court noted, Property Owners have *admitted* that the development of surrounding property has increased the volume of water in the drainage ditch, leading to the flooding of their property. This is consistent with the fact that Plaintiffs' property did not experience flooding until 1999, nearly thirty years after the ditch was constructed. There is no evidence that the ditch itself was not maintained or constituted a dangerous condition. It is the increased upstream runoff, not any condition of the ditch or any affirmative act of the City, that is creating the problem. Property Owners do not dispute this fact or distinguish *Britton* or *Miller*. Nor do Property Owners cite authority for the proposition that the City should be ordered to upgrade the drainage ditch under the circumstances of this case. Accordingly, this court finds that the district court did not err in

dismissing Plaintiffs' nuisance claim, because Plaintiffs have failed to identify an affirmative act on the part of the City that created the nuisance. *See Paduch*, 896 S.W.2d at 771.

**D.    Costs**

Property Owners also appealed the district court's award of costs in favor of the City, contending that costs should not have been awarded because the City should not have prevailed on the merits below. Because we affirm the order granting summary judgment in favor of the City, we also affirm the order granting costs.

**III.**

The district court's order granting the City of Memphis' motion for summary judgment and the order granting costs in favor of the City are **AFFIRMED**.

**HELENE N. WHITE, Circuit Judge**, concurring. Because I conclude that Property Owners' action could properly be brought only under the Governmental Tort Liabilities Act, Tenn. Code Ann. § 29-20-201, *Peterson v. Putnam Cnty.*, No. M2005-02222-COA-R3-CV, 2006 WL 3007516, at *11 (Tenn. Ct. App. Oct. 19, 2006); *Britton v. Claiborne Cnty.*, 898 S.W.2d 220, 222 (Tenn. Ct. App. 1994), and Property Owners steadfastly maintain that they do not proceed under that statute, I concur in the affirmance.