**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0319n.06

No. 10-3508

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Mar 23, 2012**

LEONARD GREEN, Clerk

JEFFREY BRAITHWAITE, ET AL.,              )
                                          )
        Plaintiff-Appellant,              )     ON APPEAL FROM THE
                                          )     UNITED STATES DISTRICT
v.                                        )     COURT FOR THE NORTHERN
                                          )     DISTRICT OF OHIO
DEPARTMENT OF HOMELAND SECURITY,          )
                                          )
        Defendant-Appellee.               )

Before:     **KEITH, GRIFFIN, and STRANCH, Circuit Judges.**

**PER CURIAM.** Plaintiffs-Appellants Jeffrey Braithwaite and Bruce Schneider appeal from

a district court order granting the Government's motion for summary judgment and dismissing their

age-discrimination complaint. They also appeal the denial of their motion to compel production of

a document. Braithwaite and Schneider worked for the Transportation Security Administration

("TSA") within the Department of Homeland Security before they were terminated during an

agency-wide restructuring. They claim that their employer's decisions not to promote or transfer

them to new jobs when their jobs were eliminated were the result of age discrimination and

retaliation. For the reasons described below, we find that neither Braithwaite nor Schneider has

satisfied his burden to survive a motion for summary judgment on these claims, and we AFFIRM

the district court's rulings.

I.

A.

This age-discrimination case features two plaintiffs with different jobs that worked for the same supervisor at TSA. It revolves around several personnel decisions involving alleged failures to promote and transfer when the plaintiffs' jobs were eliminated. Given the various moving parts, it is helpful at the outset to identify and describe the primary persons involved in this lawsuit, all of whom were TSA employees during the time period relevant to this case.

**Jeffrey Braithwaite.** Before joining TSA, Plaintiff-Appellant Jeffrey Braithwaite worked as a regional-air-freight director for a cargo company. He joined TSA in April 2002 as a Supervisory Transportation Security Screener, and then became a Scheduling Operations Officer ("SOO") at Toledo Express Airport ("TOL") in October 2002. Aside from a six-month detail as a Transportation Security Specialist, Braithwaite served as a SOO at TOL until he was terminated on September 30, 2006. Braithwaite was over 40 years old at all times relevant to this action.

**Bruce Schneider.** Before joining TSA, Plaintiff-Appellant Bruce Schneider held a number of jobs primarily in law enforcement and security with the Wayne County Sheriff's Department, the Wayne County Metropolitan Airport Police Department, and Ford Motor Company. Schneider joined TSA in October 2002 as an Assistant Federal Security Director for Screening ("AFSD/S") at TOL, a position on the Federal Security Director's staff ("FSD Staff"). Schneider served as the ASFD/S until he was terminated on September 30, 2006. Schneider was over 40 years old at all times relevant to this action.

**Michael Young.** Michael Young was a Federal Security Director ("FSD") and the head of TSA's management at Cleveland Hopkins International Airport at all times relevant to this action. In that capacity, and as one of Schneider's and Braithwaite's supervisors, Young oversaw the specific personnel decisions that animate this lawsuit.

**John Bartolomeo.** When a vacancy for the position of Deputy Federal Security Director ("DFSD") at TOL was announced in late 2004, John Bartolomeo ultimately was hired for the job over nine other candidates, including Schneider. He was still in that position when TSA reorganized in 2006, at which point Schneider's and Braithwaite's positions were eliminated under the reorganization plan.

B.

In late 2004, TSA released Vacancy Announcement TSA-05-0319 to announce a job opening for the position of FSD at TOL, which later was reclassified as the DFSD. The announcement listed the qualifications, knowledge, skills, and abilities necessary for the job. Schneider, who was then serving as the AFSD/S, applied for the promotion. TSA's Office of Human Capital screened the applicants and created an internal list of ten individuals that met basic eligibility requirements and were "minimally qualified for the position." Schneider was on this list of ten people, as was Bartolomeo. Nine of the ten applicants on the eligibility list, including Schneider, were over 40 years old; Bartolomeo was the only qualified applicant under 40 years old.

FSD Young and his deputy evaluated these ten applicants and selected five to interview for the DFSD job. Schneider was not selected for an interview. Bartolomeo was interviewed and ultimately was selected for the job. After complaining about not receiving an interview for the job,

Schneider filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against Young and the agency, claiming age discrimination. During the EEOC hearing, FSD Young explained his decision, stating that Schneider had neither the job experience nor the leadership ability to make him a top candidate. In Young's view, Schneider lacked the diverse career experience and administrative experience that the job required.

C.

According to Braithwaite, he was passed over for a promotion that would have made him a Cargo Aviation Inspector in January 2006. He initiated contact with the EEOC on March 6, 2006, after he was not selected for two other Cargo Aviation Security Inspector positions that were posted online in February 2006. He filed a formal complaint on June 13, 2006, which was heard on March 13, 2008. He stated in his EEO complaint that the earlier position was not publicly available, that he became aware of it from an email he received, and that he heard from friends that younger people got the available jobs. An email from this time period written by Bartolomeo mentions Braithwaite in connection with an existing vacancy, but it does not indicate whether Braithwaite applied for the job. Braithwaite made several vague statements in his EEO complaint regarding his application for a promotion, but did not definitively state that he actually applied for any of these vacant positions. At the March 13, 2008 hearing, Braithwaite withdrew his petition and requested a Final Agency Decision, which, when granted, cleared the way for him to file a lawsuit in federal court.

D.

In 2004, a TSA working group examined the allocation of FSD Staff positions at airports across the country. That review led to the Hub-Spoke Realignment and Reallocation Plan ("the

Plan"), which grouped the country's airports into "hubs" and associated "spokes" to streamline operations and improve overall efficiency. Under the Plan, hub airports would provide administrative support and services to their spoke airports. TSA's Office of Security Operations drafted and circulated business rules to guide this realignment, which impacted which FSD Staff positions would survive the realignment and set forth the pay bands and core functions of the hubs and spokes.

TSA operates under unique rules regarding its workforce reductions. Pursuant to the authority granted in 49 U.S.C. § 114(n), TSA's Office of Human Capital ("OHC") issued HCM Policy No. 351-3 in February 2006. It established the policies and procedures for the type of involuntary workforce reduction that occurred in this case. The Policy dictated that workforce reductions would take place at the airport level, and required management to develop target staffing plans and identify positions to be eliminated in concert with OHC.

Under the Policy, individuals whose positions were eliminated did not have "bump and retreat" rights by which eliminated employees could displace employees whose positions were retained. An employee whose position was eliminated through an involuntary workforce reduction could apply for other vacant positions, but there would be no automatic guarantee of re-employment and no right to be hired for another job for which that employee had applied. An eliminated employee could be offered another TSA position, but TSA was "not required to make such offers."

Under the Plan, Cleveland Hopkins International Airport ("CLE") was designated a hub airport with the associated spokes of TOL, Youngstown-Warren Regional Airport, and Akron-Canton Regional Airport. The Plan called for a reduction in FSD Staff for these four airports from

23 down to 20 positions. Eighteen of the 20 were allocated to CLE and two were allocated to TOL. As the head TSA official at CLE, FSD Young could reallocate those 20 positions across the four airports based on business needs, provided it was approved by headquarters. Pursuant to that authority, Young allocated one non-CLE position to TOL and the other to Akron. DFSD Bartolomeo at TOL was notified of this allocation and was asked to identify and explain which administrative position was needed at TOL. Bartolomeo recommended that *two* positions be retained at TOL—his own, and that of a Human Resources Specialist—and recommended that two other positions *not* be retained—the AFSD/S and SOO positions (Schneider's and Braithwaite's, respectively).

FSD Young passed this request up the chain, adopting Bartolomeo's recommendation that Schneider's and Braithwaite's positions be eliminated, but that proposal was denied. Young eventually resubmitted a proposal that eliminated Bartolomeo's, Schneider's, and Braithwaite's positions. That plan, which provided for only one Human Resources Specialist at TOL, was approved by July 21, 2006. Appellants Schneider and Braithwaite received notices of separation dated July 24, 2006, explaining that their positions had been eliminated, that they were selected through TSA's involuntary-workforce-reduction procedures, and that their termination would be effective September 30, 2006.

Schneider had previously filed a complaint with the EEOC alleging discrimination by Young, and Young was notified of the complaint against him on or around March 9, 2006. Schneider supplemented his complaint to include retaliation charges after he received notice of his termination. The EEOC ultimately rejected these claims, clearing the way for this lawsuit.

E.

On June 28, 2008, Braithwaite and Schneider filed this suit in the district court, alleging claims under the Age Discrimination in Employment Act ("ADEA"), which prohibits employers from discriminating against individuals because of their age. 29 U.S.C. § 623. After some discovery, the Government moved for summary judgment on November 2, 2009. The district court granted the motion for summary judgment on March 6, 2010, and entered a judgment for the Government the same day.

The Plaintiffs then filed a Rule 59(e) Motion to Alter or Amend Judgment on March 26, 2010, which the district court denied on April 1, 2010. In denying that motion, the district court ordered Plaintiffs' counsel to pay up to $2,000 to cover the costs of responding to the motion. Plaintiffs timely appealed the district court's grant of summary judgment, but their notice of appeal did not designate that they were appealing the district court order denying the motion to alter or amend the judgment and imposing costs on Plaintiffs' counsel.

II.

A.

We review a district court's grant of a motion for summary motion de novo, construing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997). Summary judgment is proper if, after viewing the evidence that way, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56. The moving party has "the burden of showing the absence of a genuine issue as

to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). For its part, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. It must provide "significant probative evidence" to defeat a proper summary-judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). That is, it "must show that a genuine issue of material fact exists as to each element" of his claim. *Burns v. City of Columbus*, 91 F.3d 836, 843 (6th Cir. 1996).

B.

Age-discrimination cases are difficult to prove. It is the rare case where we have clear, direct evidence that an employer was discriminating on the basis of age. To deal with that reality, courts assess age-discrimination claims based on indirect evidence using the familiar burden-shifting scheme from *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and *O'Connor v. Consolidated Coin Caterers Corporation*, 517 U.S. 308, 310-11 (1996). To survive a motion for summary judgment, an ADEA plaintiff must first make out a prima facie case by showing that: (1) he was a member of the protected class (i.e., was over 40 years old at the time); (2) he applied for the job vacancy and did not receive it; (3) he was qualified for the position; and (4) the individual hired was (i) similarly situated but (ii) not in the protected class. *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003). Similarly situated does not mean identical; it means that the plaintiff was "similar in all of the *relevant* aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (emphasis in original) (quotation omitted).

If the plaintiff meets that burden, the defendant must then offer a legitimate, non-discriminatory reason for its actions. If that burden is met, the burden shifts back to the plaintiff,

who then must show that the reasons offered by the employer were a pretext for discrimination.

*Ercegovich*,154 F.3d at 350. The plaintiff can establish that an otherwise legitimate reason was pretextual by showing one of three things about the offered reason: (1) that it had no basis in fact; (2) that it did not actually motivate the decision at issue; or (3) that it was insufficient to justify the decision. *Briggs v. Potter*, 463 F.3d 507, 515 (6th Cir. 2006).

> The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are "factually false." The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (*overruled on other grounds*, *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009)) (internal citation omitted). Regarding the second, the plaintiff can "indict the credibility of his employer's explanation" and establish pretext by offering circumstantial evidence showing that it is "more likely than not" that the illegal motivation was the real motivation. *Id.*

Schneider alleges that he was the victim of age discrimination when he was not selected to be promoted to the vacant DFSD job in 2005 that ultimately was given to Bartolomeo. The district court held that Schneider has established a prima facie case of discrimination. We agree. The Government concedes that Schneider was a member of the protected class; that he applied for a promotion to become DFSD; that he was qualified for the job; that he did not receive the job; and that the individual hired (Bartolomeo, who was younger than 40 when he was hired) was not in the protected class. Nevertheless, the Government argues that Schneider has not established a prima

facie case because he was not "similarly situated" to Bartolomeo. The district court properly rejected this argument: the law does not require an identical match between candidates for them to be similarly situated for purposes of the ADEA. *See Ercegovich*, 154 F.3d at 352. Schneider had an extensive background in law enforcement and significant experience working in airports in the area, including management and administrative experience. The fact that Bartolomeo "worked in TSA's Transportation Security Operations Center dealing with incident management situations" and had other different experience does not mean that Schneider was not similarly situated to him for purposes of the ADEA. Schneider's relevant experience is sufficient for him to be similarly situated. Having established a prima facie case, the burden therefore shifts to the Government to provide a legitimate, non-discriminatory reason for promoting Bartoloemo instead of Schneider.

To show that it had a legitimate reason, the Government points to the testimony of FSD Young, the person in charge of hiring Bartolomeo, who said that he did not promote Schneider because "(1) Schneider's experience was essentially limited to law enforcement; (2) other candidates had 'diverse skill sets' that were more consistent with the knowledge, skills and abilities required for the positions; (3) the duties associated with the position were more administrative than security oriented; and (4) other candidates had more operational and administrative experience, and that type of experience . . . was more relevant to the vacancy than Schneider's law enforcement background." Before the district court, the Government also offered Young's testimony that Schneider was perceived to be involved in the "dysfunctional" prior management of TOL. These are legitimate, non-discriminatory reasons for not promoting Schneider, and so the burden passes back to him to show that these reasons are a pretext for age discrimination.

Schneider attempts to show pretext by attacking FSD Young's credibility, pointing out that Young only gave two reasons in his deposition—that Schneider did not have a broad range of skills and that he was not the best qualified—but offered an additional reason in the EEOC proceeding—namely, Schneider's involvement in the prior mismanagement incident. Before the district court, Schneider reiterated that he had an "outstanding resume" and extensive experience in law enforcement. None of this establishes pretext. It does not establish that the offered reasons are factually inaccurate; it does not establish that they did not actually motivate the decision; and it does not show that they are insufficient to justify the decision. *See Briggs*, 463 F.3d at 515. Accordingly, because Schneider has failed to show that the legitimate, non-discriminatory reasons offered by the Government were pretextual, the Government is entitled to summary judgment on this claim.

C.

Braithwaite argued before the district court that he was the victim of age discrimination when he was not promoted to a vacant Cargo Aviation Inspector position in early 2006. The same burden-shifting scheme employed above applies to Braithwaite's failure-to-promote claim. Under that scheme, Braithwaite has not established a prima facie case. It is not disputed that he was a member of the protected class at the time and that he did not receive the job in question. But Braithwaite has not offered sufficient evidence establishing that he actually applied for the job or that a similarly situated person who was not a member of the protected class received the job. Braithwaite claims that the position was not made publicly available, and he points to an email from Bartolomeo that mentions Braithwaite in connection with an existing vacancy as evidence that he actually applied for the job. But none of this establishes that he actually did apply for the job in question or that someone

outside the protected class was hired instead. The Bartolomeo email does not indicate whether Braithwaite had applied for a job, it only notes vaguely that "Jeff was not on the list for the CASI vacancy," and therefore is insufficient. Accordingly, the Government is entitled to summary judgment on this claim.

D.

Braithwaite and Schneider further allege that their employer's decision not to transfer them to new positions after their existing positions were eliminated during the hub-and-spoke restructuring was the result of age discrimination. Under the realignment, employees whose positions were eliminated were not entitled to be transferred to a new position. TSA therefore had no obligation to provide Appellants with opportunities for transfer, and Appellants must provide indirect evidence showing discrimination. *Cf. Ercegovich*, 154 F.3d at 351. Similar to the test for a failure-to-promote claim, to establish a prima facie case in a failure-to-transfer claim the plaintiff must demonstrate that: (1) he is a member of the protected class; (2) at the time of his termination he was qualified for other available positions within the corporation; (3) the employer did not offer such positions to the plaintiff; and (4) a similarly situated employee who is not a member of the protected class was offered the opportunity to transfer to an available position. Otherwise the plaintiff must provide "other direct, indirect, or circumstantial evidence supporting an inference of discrimination." *Id.* The same burden-shifting scheme applies thereafter.

Appellants have not established a prima facie case on their failure-to-transfer claims. The Government concedes that both Schneider and Braithwaite were members of the protected class at the time of the 2006 realignment and that they were not offered transfer positions before they were

terminated. The Government argues that neither Schneider nor Braithwaite has established a prima

facie case because neither offered evidence that he was qualified for any of the existing vacancies

at the time. This claim is belied by the testimony of Bartolomeo in his deposition, who stated that

both Schneider and Braitwaite were qualified for various vacancies that were available across the

region, satisfying that element.[1] But despite this testimony, neither individual has offered any

evidence establishing that a similarly situated employee who was not a member of the protected class

was offered the opportunity to transfer to an available position. Nor has either individual offered

other evidence that otherwise supports an inference of discrimination based on age. Accordingly,

they have each failed to establish a prima facie case. The district court properly entered summary

judgment for the Government on Schneider's and Braithwaite's failure-to-transfer claims.

E.

Both Schneider and Braithwaite further allege that they were retaliated against for engaging

in ADEA-protected activity when their employer refused to transfer them to open positions after

their current positions were eliminated. The ADEA prohibits employers from retaliating against

their employees for engaging in protected activity, including filing a complaint with the EEOC. *See*

---

[1] This testimony makes it unnecessary for us to consider the testimony of Margaret Rhodes and the "affidavit" of John Bartolomeo, submitted by Appellants to the district court along with their motion to amend or alter the judgment, and pointed to on appeal to establish that Appellants were qualified for existing vacancies. These documents were not before the district court at the time it decided the summary-judgment motion, and we generally should avoid considering any such evidence. *Good v. Ohio Edison Co.*, 149 F.3d 413, 421 n.16 (6th Cir. 1998). Moreover, the Bartolomeo document is unsigned and is not notarized, which prevents us from considering its statements as factual. *See Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994). And, in any event, their contents are duplicative since Bartolomeo's testimony establishes that Schneider and Braithwaite were qualified for open positions.

*Gomez-Perez v. Potter*, 533 U.S. 474, 491 (2008). To make out a prima facie case for a retaliation

claim, a plaintiff must show, by a preponderance of the evidence, that: (1) he engaged in ADEA-

protected activity; (2) such activity was known to the defendant; (3) the defendant thereafter took

an employment action averse to him; and (4) there was a causal connection between the protected

activity and the adverse employment action. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531,

544 (6th Cir. 2008). Discussing Title VII, the Supreme Court stated that an adverse employment

action is one that would "dissuade[] a reasonable worker from making or supporting a charge of

discrimination." *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). And we have

held that such action must be more severe than "petty slights and minor annoyances." *Hunter v.*

*Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009). In the context of this case, refusing to

transfer either individual to a position for which they were qualified and for which they had applied

certainly is no "petty slight," and would constitute an adverse employment action. Regarding

establishing a causal connection,

> [w]here an adverse employment action occurs very close in time after an employer
> learns of a protected activity, such temporal proximity between the events is
> significant enough to constitute evidence of a causal connection for the purposes of
> satisfying a prima facie case of retaliation. But where some time elapses between
> when the employer learns of a protected activity and the subsequent adverse
> employment action, the employee must couple temporal proximity with other
> evidence of retaliatory conduct to establish causality.

*Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to provide

a legitimate, non-discriminatory reason for its actions. *Imwalle*, 515 F.3d at 544. If the defendant

does that, the burden shifts back to the plaintiff, who must show by a preponderance of the evidence

"that the legitimate reason offered by the defendant was not its true reason, but instead was a pretext designed to mask retaliation" and that "the real reason for the employer's action was intentional retaliation." *Id.*

The district court held that neither individual has established a prima facie case of retaliation. We agree. With respect to Schneider, the Government does not dispute that: (1) Schneider engaged in ADEA-protected activity, (2) that FSD Young knew about this activity before Schneider's termination, and (3) that Schneider was not transferred to another position. But Schneider has not established a causal connection that would satisfy the fourth and final element of a prima facie case. FSD Young first became aware of Schneider's EEO complaint on March 9, 2006. The only lateral transfer for a FSD Staff position in the area occurred no earlier than August 6, 2006, about five months later. Under the facts of this case, a five-month gap, standing alone, is not sufficiently close in time to establish the necessary causal connection. Apart from this five-month gap, Schneider does not point to other evidence showing that Young singled Schneider out for retaliation.[2] Accordingly, Schneider has not established a casual connection between his protected activity and the adverse employment action. The Government is entitled to summary judgment on Schneider's retaliation claim.

---

[2]Appellants point to the statement of Linda Williamson during an EEOC proceeding, who said that FSD Young has a propensity to discriminate against those employees he deems to be disloyal, and that filing an EEO complaint or grievance is the "kiss of death." (R.35-26 at 3). While this renders the case closer, such a general statement is not enough to establish a causal connection between Schneider's protected activity and any adverse employment action that may have been directed specifically at him.

With respect to Braithwaite, the Government does not dispute that Braithwaite engaged in ADEA-protected activity that was known to FSD Young prior to Braithwaite being terminated. But Braithwaite has not established that he suffered an adverse employment action from TSA, and so his retaliation claim fails. As discussed, TSA employees whose jobs were eliminated under the realignment were not entitled to a transfer under the governing policy. And Braithwaite has not provided any evidence showing that he actually applied for a transfer either before or after he learned his job was being eliminated. Accordingly, he has not made out a prima facie case of retaliation, and the Government is entitled to summary judgment on this claim as well.

III.

Appellants raise a number of other arguments in their brief. They argue that: (1) the district court erred by treating the workforce reduction at issue as a reduction in force ("RIF"); (2) the district court abused its discretion by denying their motion to compel production of a management inquiry related to TOL; and (3) the district court abused its discretion by imposing sanctions on Appellants' counsel. None of these arguments has merit.

A.

Appellants argue that the district court erred by referring to the 2006 reorganization as a RIF. They seem to argue that the district court failed to employ the relevant policy governing the TSA realignment, and that Appellants should have been given preference in any effort to be transferred to a new position. The Government responds by saying that the Appellants have misunderstood the district court's use of the term, and that HCM Policy No. 351-3, which the district court invoked, governs the involuntary workforce that took place here instead of the generally applicable federal

regulations applicable to RIFs. The Government is correct. TSA's involuntary workforce reduction at issue here was governed by Policy No. 351-3, which does not provide for "bump and retreat" rights and does not provide that displaced employees must be given preference for vacant positions. To be sure, the district court did use the term "reduction in force" in describing the realignment, but it applied the proper legal framework in its analysis and therefore did not err.

B.

We review the district court's denial of a motion to compel for an abuse of discretion. *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993). The scope of proper discovery under the Federal Rules of Civil Procedure is quite broad, but a party does not have a right to compel production of a document that is irrelevant and will not reasonably lead to other admissible evidence. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978). Appellants argue that a 2004 management-inquiry report related to misconduct by FSD Robert Turay, also at TOL, should have been provided to them. The district court denied the motion after reviewing the report in question, finding that the information in it was duplicative and not relevant. The district court also held that it was not discoverable under the executive-deliberative-process privilege. We need not review the latter holding because the district court did not abuse its discretion in holding that it was not relevant. The district court examined the document and correctly concluded that it contained "but passing references to Schneider" that did not add anything noteworthy to the record related to the discrimination claims at issue here. It did not abuse its discretion in denying Appellants' motion to compel.

C.

Appellants also argue that the district court abused its discretion when it imposed a sanction of $2,000 on Appellants' counsel, but we lack jurisdiction to review this ruling. This ruling came in an order dated April 1, 2010. The notice of appeal, which was filed on April 7, 2010, specifically mentioned the Judgment and Order entered on March 16, 2010, but did not mention the order imposing sanctions. Federal Rule of Appellate Procedure 3(c) requires that a notice of appeal specifically "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). And although the ruling imposing sanctions was mentioned in the Statements of Parties and Issues filed on May 9 and May 10, 2010, which arguably mitigates any problems of providing adequate notice, we have held that this jurisdictional requirement is to be strictly construed. *United States v. Glover*, 242 F.3d 333, 336-37 (6th Cir. 2001). Accordingly, because the notice of appeal itself did not specify the ruling imposing sanctions, that decision is not properly before us for review.

IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.