Thomas WALLS, Plaintiff,

v.

Bill JOHNSON, President and CEO of the Tennessee Valley Authority, Defendant.

Case No. 1:15–CV–139

United States District Court, E.D. Tennessee, Southern Division.

Filed 01/25/2017

Douglas S. Hamill, Burnette, Dobson & Pinchak, Chattanooga, TN, for Plaintiff.

Edward C. Meade, Edwin W. Small, Tricia L. Roelofs, Frances Regina Koho, Tennessee Valley Authority, Knoxville, TN, for Defendant.

## ORDER

### TRAVIS R. MCDONOUGH, UNITED STATES DISTRICT JUDGE

Before the Court is a motion for summary judgment filed by Defendant William D. Johnson, President and Chief Executive Officer of the Tennessee Valley Authority ("TVA").[1] (Doc. 25.) For the reasons stated herein, TVA's motion will be **GRANTED IN PART** and **DENIED IN PART**.[2]

### I. BACKGROUND [3]

Plaintiff Thomas Walls is a former employee of TVA. (*See* Doc. 30-1, at 1.) TVA is an executive branch corporate agency and instrumentality of the United States of America, 16 U.S.C. §§ 831-831ee, and Bill Johnson is TVA's President and Chief Executive Officer. (Doc. 30-8, at 1.) Walls began his employment with TVA in February 1985. (Doc. 30-1, at 1.) From 1995 until the end of his career in September of 2014, Walls worked as a Programmer Analyst, reporting to managers in TVA's Information Technology ("IT") department. (*Id.* at 1-2.)

On December 31, 2012, Walls applied for a vacant "System Analyst C" position, a

---

1. For ease of reference, the Court will refer to Defendant as TVA.

2. Also before the Court is TVA's motion for leave to file a supplemental declaration related to its motion for summary judgment. (Doc. 38.) TVA requests leave to file the supplemental declaration to include information that was inadvertently omitted as part of its motion for summary judgment. The Court hereby **GRANTS** TVA's motion for leave to file the supplemental declaration. (Doc. 38.)

3. For the purposes of summary judgment, the Court will view the facts in the light most favorable to Plaintiff Thomas Walls. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

position with higher pay. (*Id.* at 2.) At the time he applied, he was fifty-one-years-old. (*Id.*) Walls's supervisor at the time, Satish Patel, was the hiring manager for the System Analyst C position. (Doc. 26–1, at 1.) According to Patel, he wanted a technical expert with experience in at least two programming languages, who could lead teams of two or more programmers, and who could provide technical assistance on multiple computer systems when coding or programming challenges arose.[4] (*Id.* at 2.)

Walls recalls that, not long after he applied for the position, Patel asked him if he was "serious" about the position and suggested that he talk to James Phillips, Patel's supervisor, about the possibility of reclassifying his current position with a pay raise rather than pursuing the System Analyst C position. (Doc. 30–1, at 2.) When Walls met with Phillips, Phillips asked him when he was going to retire, "questioned whether [he] really wanted the System Analyst position," and suggested that Walls's motivation for pursuing the position was simply to "increase [his] salary for pension purposes." (*Id.* at 2–3, 5.)

As part of the hiring process, Patel developed criteria to determine each applicant's qualifications from written records, including resumes and internal TVA service reviews, and required each applicant to take a standardized assessment test to assess proficiency with different programming technologies. (Doc. 26–1, at 4.) According to Patel, the interview was weighted as seventy percent of the selection criteria, with the remaining thirty percent based on the records review and assessment test. (Doc. 30–2, at 11.)

On February 5, 2013, Walls interviewed for the System Analyst C position. (Doc. 26–1, at 5; Doc. 30–1, at 3.) Following his interview, Walls wrote in his planner, "[i]nterviewed at 10 am for Systems Analyst job; I thought it went ok. Obviously [Patel] thought I was wasting his time; kept checking his blackberry & even left while I was answering a question." (Doc. 26–8, at 1.) After taking the standardized assessment on February 7, 2013, Walls wrote in his planner "took an ASP.NET assessment test. Blew it! and real pissed!" (*Id.* at 2.)

In total, four individuals interviewed for the Systems Analyst C position. (Doc. 26–1, at 4–5.) Patel notes that, while the interview panels may have included different managers, applicants were asked the same questions. (*Id.*) Patel recorded scores for each applicant in a selection matrix and calculated each applicant's overall score. (*Id.* at 5, 29.) Patel's selection matrix also indicates that each of the four applicants who interviewed met the minimum qualifications required for the position. (*Id.* at 4, 29.) Ultimately, Matthew Franz, a thirty-two-year-old Programmer Analyst who received the highest overall score, was selected for the position.[5] (Doc. 26–1, at 4–5,

---

4. Prior to posting a vacant position announcement, Patel modified the position qualifications to add that applicants must have "at least two years of experience in delivering solutions for energy delivery and/or energy trading, proficient in Visual Studio 2010, HTML, JavaScript, and ASP.Net, five years of experience in VB.net, C#.net, at least one year in MVC Framework, Entity Framework, and JQuery." (Doc. 30–3, at 2–3.) According to Michelle Woods, a recruiter for TVA, these new requirements were not listed in the position description historically used to fill vacant Systems Analyst positions. (*Id.* at 1–3.) Patel

averred that the purpose of modifying the announcement was "to provide the relevant language that is applicable in today's technology and the work that [his] group was doing at the time and to provide all candidates with an opportunity to see what kind of skill sets, experiences, and qualifications that they would be evaluated against during the interview process." (Doc. 26–1, at 3.)

5. Patel, Matthew Dean, and Sam Boozer conducted Walls's interview. (Doc. 26–1, at 5; Doc. 30–1, at 3.) Walls notes that Franz had a different interview panel, comprised of Patel,

29; Doc. 30–5, at 1–2.) Walls received the lowest overall score. (Doc. 26–1, at 4–5, 29.)

Nonetheless, Walls asserts that he was more qualified for the position than Franz. (Doc. 30–1, at 3–4.) Walls notes that, at the time he interviewed for the position, he had: (1) twenty-eight years of Programmer Analyst and System Analyst experience with TVA; (2) worked at every TVA nuclear plant, most TVA fossil plants, and supported TVA's Medical and Delivery organizations; and (3) led several major projects for TVA's Energy Delivery group. (*Id.*) Conversely, Walls notes that Franz only had two years of work experience with TVA, had never worked on a quality assurance system, and had not designed, built, documented, and installed a major computer application. (*Id.*) Walls also notes that Franz had seven projects rejected, while he never had a project rejected. (*Id.*)

On March 6, 2013, Walls met with Patel to discuss why he was not selected for the Systems Analyst C position. (*Id.* at 5.) According to Walls, Patel stated, "[u]nfortunately, at your age, sometimes there is no place to go." (*Id.*) Patel, however, denies making this statement. (Doc. 26–1, at 7.)

On July 8, 2013, Walls filed a complaint with TVA's Equal Opportunity Compliance ("EOC") office, alleging that he was not selected for the Systems Analyst C position because of age discrimination. (Doc. 26–17, at 2–3.) Senior leadership and managers in TVA's IT department were aware of Walls's EOC complaint by January 2014. (Doc. 26–12, at 5; Doc. 30–9; Doc. 30–11, at 2.)

Jim Phillips, Craig Aho, and Sam Boozer. (Doc. 26–1, at 5.) According to Patel, Phillips did not participate in Walls's interview due to a scheduling conflict. (*Id.*)

In the fall of 2013, TVA announced an initiative to reduce its operations and maintenance expenses by $500 million by fiscal year 2015. (Doc. 26–5, at 1.) Consistent with this objective, between January and March of 2014, TVA offered voluntary reduction-in-force packages to all TVA employees outside its Nuclear organization who had at least one year of full-time TVA service. (*Id.* at 2; Doc. 30–1, at 8.) According to Clay DeLoach, Director of Operations Solutions Delivery, the voluntary reduction-in-force offering was designed to "ameliorate the impact of a forced reduction through an involuntary reduction-in-force." (Doc. 26–5, at 2.) While sixteen Programmer Analysts ultimately separated from TVA pursuant to the voluntary reduction-in-force, Walls declined the offer. (Doc. 30–1, at 8.)

Beginning in March 2014, after the voluntary reduction-in-force offering closed, TVA released new organizational charts for each non-Nuclear TVA organization. (Doc. 26–3, at 1.) As part of the reorganization process, TVA eliminated the Programmer Analyst and Systems Analyst positions and combined them into one new position—Software Engineer. (Doc. 30–1, at 6.) Walls's new supervisor, Scott Davison, communicated to all Programmer Analysts and System Analysts that they could "bid" on the new Software Engineer positions, meaning that "all TVA employees who had not elected to resign from TVA through the involuntary reduction-in-force offering ... were permitted to apply for one of the vacant positions."[6] (Doc. 26–3, at 4; Doc. 30–1, at 6.) Any employee in an eliminated position who did not apply for, did not receive, or rejected an offer for a

6. Shortly before the new Software Engineer positions were announced, Walls told Davison he did not like the idea of reapplying for a new position because his "job ha[d] not changed at all in 20 years." (Doc. 26-8, at 3.)

new position would be terminated as part of an involuntary reduction-in-force. (*See* Doc. 26–3, at 2, 7.)

On April 16, 2014, Walls discussed the reorganization with DeLoach. (Doc. 30–1, at 8.) According to Walls, DeLoach asked Walls his age, and, after Walls responded, proceeded to ask him, "Why don't you go ahead and retire? You've got plenty of money. Why don't you go ahead and retire and get out of this mess?" (*Id.*) Walls responded that he needed to work "several more years." (*Id.*)

Walls proceeded to apply for multiple Software Engineer positions and for the positions of Human Resource Analyst and Database Administrator. (Doc. 30–1, at 9.) Walls interviewed for multiple Software Engineer positions in May 2014. (*Id.* at 9–10.) On May 5, 2014, Walls interviewed for a Software Engineer B position in the IT organization's Operations Solution Delivery ("OSD") department. (Doc. 26–3, at 5.) Walls's interview panel consisted of Davison, OSD manager Carrie Meade Fogleman, and IT Business Consultant Sam Booker. (*Id.*) Immediately after the interview, Walls e-mailed Fogleman, stating:

> Thank you for taking the time to interview me this morning. Things didn't go as well as I had hoped but that is all water under the bridge at this point. I have had an interesting career and I am truly blessed to have had the opportunities that I have had with TVA.

(*Id.* at 63.) Walls also sent an e-mail to Booker, stating: "Thanks for the interview. It didn't go very well but I have learned things seldom go as planned." (*Id.* at 61.) According to Davison, Walls's overall score was lower than the cutoff score

necessary to be selected for the Software Engineer B position, and, as a result, he was not offered a Software Engineer B position.[7] (*Id.* at 5–6.)

On May 14, 2014, Walls interviewed for Software Engineer B and D positions in the Enterprise Solutions Delivery ("ESD") department. (Doc. 26–4, at 2–4.) This time, the interview process was comprised of two parts, an oral interview and a written exam. (*Id.*) Again, according to TVA, Walls did not score above the established cutoff for either the Software Engineer B or the Software Engineer D positions, and, thus, did not receive an offer for either position. (*Id.* at 4, 7–79.)

Excluding the sixteen Programmer Analysts who separated pursuant to the voluntary reduction-in-force and four others who separated permanently for other reasons, there were fifty-six Programmer Analysts, including Walls, who were potentially subject to TVA's involuntary reduction-in-force. (Doc. 26–6, at 3, 6–20.) Fifty of those fifty-six Programmer Analysts were selected to fill Software Engineer positions. (*Id.*) Of the six who were not selected, three either did not apply for, or did not accept, a new position. (Doc. 26–2, at 4.) Walls was one of three Programmer Analysts who applied, but did not obtain a score high enough in the selection process to receive an offer to become a Software Engineer. (Doc. 26–3, at 5–6; Doc. 26–4, at 2–4.)

On June 16, 2014, Davison informed Walls that he would be subject to the involuntary reduction-in-force. (Doc. 30–1, at 10–11.) Davison explained to Walls that the scores he received during the Software Engineer selection process were too low

---

**7.** Specifically, according to Davison, "the selection team established a cut-off score of 64.26," and "[e]mployees who scored less than 64.26 on the Selection Matrix were deemed to be not qualified for the position."

(Doc. 26–3, at 6.) According to Davison, Walls scored a 40.9, which ranked him forty-third of forty-five internal candidates. (*Id.* at 6, 65–66.)

and that he was not qualified for any other positions within the IT organization. (*Id.*) On July 18, 2014, TVA officially informed Walls that he would be terminated pursuant to the involuntary reduction-in-force, effective September 30, 2014. (*Id.* at 11.) On November 5, 2014, Walls filed a second complaint of discrimination with TVA's EOC office, alleging age discrimination and retaliation in connection with his termination. (*See* Doc. 1, at 7.)

Walls initiated this action on June 3, 2015. (*Id.*) In his complaint, Walls alleges TVA unlawfully discriminated against him based on his age and retaliated against him for lodging an age discrimination complaint, both violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. (*See id.*) TVA has moved for summary judgment on Walls's claims. (Doc. 25.) TVA's motion is now ripe for the Court's review.

## II. STANDARD OF LAW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52, 106 S.Ct. 2505; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

## III. ANALYSIS

As it relates to employment by the Federal Government, the ADEA provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age ... shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Additionally, the ADEA makes it unlawful for an employer to retaliate against an employee for engaging in any protected activity. 29 U.S.C. § 623(d). "An employee is engaged in protected activity if [he or] she 'has opposed any practice made unlawful' by the ADEA ... or if [the employee] has participated in any manner in an investigation, proceed-

ing, or litigation under' the ADEA." *Aldrich v. Rural Health Servs. Consortium, Inc.*, 579 Fed.Appx. 335, 337 (6th Cir. 2014) (quoting 29 U.S.C. § 623(d)). In this case, Walls alleges TVA engaged in unlawful age discrimination and violated the ADEA by: (1) failing to promote him to the Systems Analyst C position; (2) failing to select him for a Software Engineer position during its reorganization process; and (3) terminating him as part of its involuntary reduction-in-force. (Doc. 1, at 6–7.) Walls also alleges TVA unlawfully retaliated against him for engaging in protected activity by failing to select him for a Software Engineer position and terminating him as part of its involuntary reduction-in-force. (*Id.*)

■ An employee may establish a violation of the ADEA by providing direct evidence of discrimination or retaliation or by utilizing circumstantial evidence and proceeding under the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Briggs v. Potter*, 463 F.3d 507, 514 (6th Cir. 2006). In this case, Walls relies only on circumstantial evidence to support his age discrimination and retaliation claims. The *McDonnell Douglas* burden-shifting framework initially requires the plaintiff to establish a *prima facie* case for age discrimination or retaliation. *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014); *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010). "The burden of proof at the *prima facie* stage is minimal." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 283 (6th Cir. 2012) (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)); *see also Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 986, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (noting in a disparate treatment case that "[t]he burden of

proving a *prima facie* case is not onerous" (internal quotation marks omitted)). If the plaintiff satisfies his burden of demonstrating the *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking an adverse employment action. *Pierson*, 749 F.3d at 536; *Spengler*, 615 F.3d at 492. Once the employer articulates a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is actually pretext for discrimination or retaliation. *Pierson*, 749 F.3d at 536; *Spengler*, 615 F.3d at 492.

### A. Age Discrimination–Failure to Promote to Systems Analyst C Position

■ Under the *McDonnell Douglas* framework, Walls must first establish a *prima facie* case for age discrimination by proffering evidence that: (1) he is a member of a protected class, that is, he is at least forty years old; (2) he applied for and was qualified for a promotion; (3) he was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job. *Philbrick v. Holder*, 583 Fed.Appx. 478, 482 (6th Cir. 2014). TVA does not dispute that Walls can establish two prongs of his *prima facie* case for age discrimination, namely that he was a member of a protected class and that he was denied a promotion to the Systems Analyst C position. Accordingly, to satisfy his minimal burden of establishing his *prima facie* case, Walls must set forth sufficient evidence showing that he was qualified for the Systems Analyst C position and that an individual of similar qualifications under the age of forty ultimately received the position.

 In this case, the Court finds that Walls has met his minimal burden at the *prima facie* stage by providing sufficient evidence from which a reasonable fact-finder could conclude that he was qualified for the Systems Analyst C position and that he possessed similar qualifications to the individual outside the protected class ultimately selected for the position. Patel's scoring matrix for the Systems Analyst C position specifically notes that Walls meets the minimum qualifications required for the position, thereby confirming that Patel believed Walls was at least minimally qualified. (Doc. 26–1, at 5, 29.) Additionally, the fact that Patel's selection matrix indicates that Franz, the individual under the age of forty selected for the Systems Analyst C position, also meets the position's minimum requirements is sufficient circumstantial evidence to suggest that Walls and Franz possessed similar qualifications. (*Id.*) Accordingly, Walls has proffered sufficient evidence to satisfy his *prima facie* case.

Because Walls has established his *prima facie* case, the burden shifts to TVA to set forth a legitimate, nondiscriminatory reason for not promoting Walls to the Systems Analyst C position. Here, TVA has asserted that it selected Franz for the position because he had the highest overall score among the candidates interviewed and considered for the position. (*Id.* at 5–6, 29.) Walls does not dispute that TVA has satisfied its burden to set forth a legitimate, nondiscriminatory reason for selecting Franz and not promoting him. (*See* Doc. 31, at 11.)

 Because TVA has articulated a legitimate, nondiscriminatory reason for not promoting Walls to the Systems Analyst C position, the burden shifts back to Walls to demonstrate that TVA's proffered reason was actually pretext for age discrimination. One way of demonstrating pretext is to provide evidence that an employer's stated legitimate, nondiscriminatory reason did not actually motivate its decision not to promote a member of a protected class. *Braithwaite v. Dep't of Homeland Sec.*, 473 Fed.Appx. 405, 411 (6th Cir. 2012). Under this category of evidence, an employee attempts to "indict the credibility of his employer's explanation and establish pretext by offering circumstantial evidence showing that it is more likely than not that the illegal motivation was the real motivation" for the adverse employment action.[8] *Id.* (internal quotations omitted).

 In this case, Walls has presented sufficient evidence to create a genuine issue of material fact regarding pretext. In a declaration, Walls avers that Patel and Patel's supervisor, James Phillips, made comments suggesting that he was not suited for the Systems Analyst C position because of his age. (Doc. 30–1, at 2–3, 5.) Specifically, Walls avers that, after he applied for the position, but prior to his interview, Phillips asked him when he was going to retire, questioned him about whether he really wanted the position, and suggested that his motivation for pursuing the position was simply to increase his salary for pension purposes. (*Id.* at 2–3.) Walls also avers that, after his interview, when he asked Patel why he was not selected for the position, Patel stated that "[u]nfortunately, at your age, sometimes there is no place to go." (*Id.* at 5.) Although Patel denies making this statement (Doc. 26–1, at 7), the Court is not permitted to weigh conflicting evidence at the

8. Other ways to establish pretext include demonstrating that a legitimate, non-discriminatory reason has no basis in fact or was insufficient to motivate the adverse employment decision. *Jones v. Memphis Light, Gas & Water Div.*, 346 Fed.Appx. 38, 43 (6th Cir. 2009) (citing *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 720 (6th Cir. 2006)).

summary judgment stage. Viewing the evidence in the light most favorable to Walls, and drawing all reasonable inferences in his favor as the Court is required to do at the summary judgment stage, the Court finds that Walls has furnished sufficient evidence from which a reasonable jury could conclude that TVA's proffered reason for not promoting him was actually pretext for age discrimination.

Finding that Walls has met his burden of establishing his *prima facie* case and established that genuine issues of material fact remain as to whether TVA's stated reason for not promoting him to the Systems Analyst C position was pretext for age discrimination, the Court will **DENY** TVA's motion for summary judgment on Walls's failure to promote claim.

### B. Age Discrimination–Failure to Offer a Software Engineer Position and Termination

In opposing TVA's motion for summary judgment, Walls asserts that his age discrimination claim regarding TVA's failure to hire him as a Software Engineer and his age discrimination claim regarding his termination as part of TVA's involuntary reduction-in-force are "intertwined." (Doc. 31, at 6.) That is, he was terminated as part of TVA's involuntary reduction-in-force because he was not selected for a Software Engineer position. (*Id.*) Characterizing TVA's failure to offer him a Software Engineer position and his subsequent termination as a single continuous plan designed to terminate older employees as part of its reduction-in-force efforts, Walls utilizes the same set of circumstantial evidence to argue summary judgment is inappropriate. Because Walls views his age discrimination claims as "intertwined" and relies on the same circumstantial evidence to support both claims, the Court will analyze these claims together under the *McDonnell Douglas* burden-shifting framework established for reduction-in-force cases.

■ Under the ADEA, where "there is a reduction in force, a plaintiff must either show that age was a factor in eliminating his position, or, where some employees are shifted to other positions, that he was qualified for another position, he was not given a new position, and that the decision not to place him in a new position was motivated by plaintiff's age." *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998). Consequently, in a reduction-in-force case, the fourth prong of the *prima facie* case for age discrimination "is supplanted by the requirement that the plaintiff proffer 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons.'" *Id.* (quoting *Barnes v. GenCorp. Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

For the purposes of its summary judgment motion, TVA does not dispute that Walls can satisfy his burden at the *prima facie* stage to demonstrate that he: (1) was over the age of forty; (2) was qualified for a Software Engineer position; and (3) was not offered a Software Engineer position. (Doc. 27, at 17, 21.) TVA, however, contends that Walls has not met his burden of providing additional direct, circumstantial, or statistical evidence demonstrating he was not offered a Software Engineer position and was terminated for impermissible reasons. (*Id.* at 21.)

In support of his age discrimination claims, Walls submitted expert reports provided by Liesl Fox, Ph.D., a consultant who specializes "in data analysis and application of statistical methodology to various fields of study." (Doc. 30–18.) In her report, Fox opines that a "statistically significant[ ] disproportionate number of employees aged 40 years and older ... were

targeted for [involuntary reduction-in-force] terminations in the IT department at TVA" and that "the average age of the group of employees who were working as Programmer Analysts decreased 1.5 years after the [involuntary reduction-in-force] terminations occurred." (*Id.* at 32–33.) In support of these conclusions, Fox cites that, after the close of TVA's voluntary reduction-in-force, fifty-six Programmer Analysts remained employed by TVA.[9] (Doc. 26–6, at 3, 6–20; Doc. 30–18, at 33.) Of these fifty-six Programmer Analysts, six were terminated as part of TVA's involuntary reduction-in-force, each of them over the age of forty.[10] (Doc. 26–6, at 3, 6–20; Doc. 30–18, at 33.) In total, six of thirty-two Programmer Analysts over the age of forty were terminated as part of the involuntary reduction-in-force; conversely, none of the twenty-four Programmer Analysts under the age of forty were selected for the involuntary reduction-in-force. (Doc. 30–18, at 33–34.) Fox asserts that such data indicates a statistically significant disparity at -2.24 standard deviations, thereby suggesting that older employees were overrepresented at a statistically significant level in TVA's Software Engineer selection process and its subsequent involuntary reduction-in-force. (*Id.*)

■ TVA has not provided a rebuttal expert report but nonetheless argues that Dr. Fox's conclusions are flawed based on the small sample size and because they are not specific to the selection rates for the five specific Software Engineer positions that Walls applied for.[11] (Doc. 35, at 10–11.) While TVA has identified potential bases for undermining Dr. Fox's conclusions, such arguments concern the weight and credibility of Dr. Fox's opinions, which are factual matters that TVA can address through cross-examination at trial. Accordingly, based on the statistical evidence provided in Dr. Fox's expert reports, the Court finds that Walls has satisfied his minimal burden at the *prima facie* stage to provide statistical evidence tending to indicate he was not selected for a Software Engineer position and was terminated as part of the involuntary reduction-in-force for impermissible reasons.

With the burden shifting to TVA to articulate a legitimate, nondiscriminatory reason for not hiring Walls as a Software Engineer and subsequently terminating him as part of its involuntary reduction-in-force, TVA asserts that it did not hire Walls as a Software Engineer, because he did not score above the requisite cut-off scores during the selection process. (Doc. 26–3, at 6; Doc. 26–4, at 4; Doc. 27, at 20.)

9. In her report, Dr. Fox also asserts that older members of TVA's IT department were adversely impacted by TVA's reorganization based on data regarding employees who separated as part of a voluntary reduction-in-force initiative. Statistical evidence regarding employees who voluntarily separated from TVA, however, is irrelevant in determining whether TVA engaged in age discrimination by not hiring Walls for a Software Engineer position or by terminating him as part of its involuntary reduction-in-force. *Gerth v. Sears, Roebuck & Co.*, No. 94–6664, 1996 WL 464984 (6th Cir. Aug. 14, 1996) ("[E]arly retirement plans are not exemplary of age discrimination unless the plaintiff offers 'proof that the employee was forced to retire.'" (quoting *Simpson v. Midland–Ross Corp.*, 823 F.2d

937, 944 (6th Cir.1987))). In this case, there is insufficient proof in the record to suggest that any employees were forced to participate in TVA's voluntary reduction-in-force.

10. TVA notes, however, that three of the six terminated employees did not pursue a Software Engineer position or accept a Software Engineer position TVA offered to them. (Doc. 26–2, at 4.)

11. Although TVA questions the relevance of Dr. Fox's opinions, it has not challenged her qualifications or methodology or otherwise moved to exclude her opinions under Rule 702 of the Federal Rules of Evidence.

Walls does not dispute that TVA has satisfied its burden to set forth a legitimate, nondiscriminatory reason for not hiring him as a Software Engineer. (*See* Doc. 31, at 16.)

■ Because TVA has offered a legitimate, nondiscriminatory reason for not offering Walls a Software Engineer position, the burden shifts back to Walls to demonstrate that TVA's proffered reason was actually pretext for age discrimination. Although TVA has submitted considerable evidence that weighs against a finding of pretext, the Court finds that Walls has submitted some evidence to support his argument that TVA's proffered reason did not actually motivate its decisions not to hire him as a Software Engineer and to terminate him as part of the involuntary reduction-in-force. Specifically, in April 2014, the month immediately before Walls interviewed for multiple Software Engineer positions, Walls avers that he had a conversation with Clay DeLoach, Director of Operations Solutions Delivery, in which DeLoach asked him how old he was and suggested to him that he should retire because he had "plenty of money." (Doc. 26–5, at 1; Doc. 30–1, at 8.) While DeLoach denies making this comment and claims that he was not directly involved in the selection process for the Software Engineer positions, he does acknowledge that part his duties were "to figure out who … would not have a job after … reductions" and to report to his manager "the names of employees … who were being terminated pursuant to the [involuntary reduction-in-force] because they held one of the eliminated positions and they did not score high enough for a new position." (Doc. 26–5, at 4; Doc. 30–10, at 2; Doc. 34–2, at 2.) Construing DeLoach's statements, as well as the statistical evidence provided by Dr. Fox, in the light most favorable to Walls and drawing all reasonable inferences in his favor, the Court finds that Walls has presented sufficient evidence from which a

reasonable trier of fact could find TVA's proffered, nondiscriminatory reason for not hiring Walls as a Software Engineer and terminating him as part of its involuntary reduction-in-force was actually pretext. *See Hale v. ABF Freight Sys., Inc.*, 503 Fed.Appx. 323, 335 (6th Cir. 2012).

Accordingly, the Court will **DENY** TVA's motion for summary judgment on Walls's age discrimination claims related to TVA's decision not to hire him as a Software Engineer and its decision to terminate him as part of its involuntary reduction-in-force.

### C. Retaliation–Failure to Offer a Software Engineer Position and Termination

In opposing TVA's motion for summary judgment on his retaliation claims, Walls again relies on the same circumstantial evidence to support his retaliation claim based on TVA's decision not to hire him a Software Engineer and his retaliation claim based on his termination as part of its involuntary reduction-in-force. Because Walls relies on the same circumstantial evidence to support both claims, the Court will analyze these claims together under the *McDonnell Douglas* burden-shifting framework.

■ To make out a *prima facie* case of retaliation under 29 U.S.C. § 623(d), an employee must demonstrate that: (1) he engaged in protected activity; (2) the employer knew about the protected activity; (3) he suffered an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *Aldrich*, 579 Fed.Appx. at 337. For the purposes of its summary judgment motion, TVA does not dispute that Walls can satisfy his *prima facie* case of retaliation, but, again, asserts that it did not offer Walls a Software Engineer position and subsequently terminated him as part of the involuntary reduc-

tion-in-force because he failed to score above the requisite cut-off scores during the Software Engineer selection process. (Doc. 27, at 20.) Walls does not dispute that TVA has satisfied its burden to set forth a legitimate, nondiscriminatory reason for not offering him a Software Engineer position. (*See* Doc. 31, at 23.)

■ Because TVA has offered a legitimate, nondiscriminatory reason, the burden shifts back to Walls to demonstrate that TVA's proffered reason was actually pretext for retaliation. As his basis for arguing pretext, Walls first asserts that Stephen Summers, TVA's Director or Enterprise Solutions Delivery, identified him as a trouble-maker and problem employee to Dan Traynor, TVA's Chief Information Officer, in an e-mail sent five days before he was initially notified that he would be terminated as part of the involuntary reduction-in-force. (Doc. 31, at 23 (citing Doc. 30–19, at 1).) The e-mail Walls references, however, does not mention him as a trouble-maker or problem employee; rather, it discusses potential issues with another employee, Jeff Long, and simply states that Walls and other employees "may have complained out of [Operations Solution Delivery]." (Doc. 30–19, at 1.) Without additional context or explanation, the Court finds that an e-mail alluding to the fact that Walls "may have complained" is insufficient to create a genuine issue of fact as to whether TVA's proffered reason was actually pretext for retaliation against Walls for engaging in protected activity under the ADEA.

Walls next argues that the timing of TVA's decision not to offer him a Software Engineer position and notification that he would be subject to the involuntary reduction-in-force suggests that TVA's proffered reason for termination was pretext for retaliation. Specifically, Walls notes that managers involved in the Software Engineer interview process knew he com-

plained to TVA's EOC office regarding its failure to promote him to the Systems Analyst C position and that TVA's EOC office interviewed several members of management in the months immediately preceding his notification that he would be subject to the involuntary reduction-in-force. (Doc. 31, at 24.) Walls argues that the temporal proximity between the interviews conducted by EOC investigators and TVA's notification that he would be subject to the involuntary reduction-in-force is sufficient to demonstrate that TVA's proffered reason did not actually motivate its decision not to offer him a Software Engineer position. (*Id.*)

The Court finds that the timing of TVA's decision not to hire Walls as a Software Engineer is insufficient to create a genuine issue of material fact as to pretext on his retaliation claims. Walls filed his complaint regarding TVA's failure to promote him to the Systems Analyst C position in July 2013. Walls, however, did not interview for Software Engineer positions until May 2014—ten months later. Although TVA's EOC office interviewed members of management less than two months before TVA informed him that he would not be hired as a Software Engineer and would be terminated, the timing of those interviews alone is insufficient to show it is more likely than not that retaliation was TVA's real motivation for not hiring him as a Software Engineer. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012) ("[T]emporal proximity cannot be the sole basis for finding pretext.").

Finally, Walls argues that TVA employed an unfair selection process in determining whom to hire as a Software Engineer and that the unfair selection process demonstrates pretext. Specifically, Walls contends that the Software Engineer positions he applied for were functionally identical to his Programmer Analyst position

and that interview panelists graded him unreasonably low on his answers to questions posed during interviews. (Doc. 31, at 20.) Walls's argument that retaliation actually motivated TVA's decision not hire him as a Software Engineer, however, is belied by e-mails he sent to interview panelists immediately after his interview for the Software Engineer B position. Indeed, immediately following his May 5, 2014, interview, Walls e-mailed Carrie Fogleman, stating:

> Thank you for taking the time to interview me this morning. Things didn't go as well as I had hoped but that is all water under the bridge at this point. I have had an interesting career and I am truly blessed to have had the opportunities that I have had with TVA.

(Doc. 26–3, at 63.) Walls also sent an e-mail to Sam Booker, stating, "Thanks for the interview. It didn't go very well but I have learned things seldom go as planned." (*Id.* at 61.) Such statements are inconsistent with Walls's contention that he was graded unreasonably low during the interview process. Moreover, Walls's subjective belief that he should have received higher scores in response to questions in both his May 5, 2014, and May 14, 2014, interviews is insufficient to create a genuine issue of material fact as to whether retaliation for engaging in protected activity is the actual reason for TVA's decision not to hire him as a Software Engineer and its decision to terminate him as part of its involuntary reduction-in-force. *Johnson v. Lockheed Martin Corp.,* 598 Fed.Appx. 364, 369 (6th Cir. 2015).

The record is simply devoid of evidence indicating that retaliation is more likely than not TVA's real motivation for not offering Walls a Software Engineer position and terminating him as part of its involuntary reduction-in-force. Accordingly, because Walls has failed to demonstrate that a genuine issue of material fact remains as to whether TVA's stated reason was pretext for retaliation, the Court will **GRANT** TVA's motion for summary judgment on Walls's retaliation claims related to TVA's decision not to hire him as a Software Engineer and its decision to terminate him as part of its involuntary reduction-in-force.

## IV. CONCLUSION

For the reasons stated herein, TVA's motion for leave to file a supplemental declaration (Doc. 38) is **GRANTED.** TVA's motion for summary judgment (Doc. 25) is hereby **GRANTED IN PART** and **DENIED IN PART.** Walls's retaliation claims related to TVA's decisions not to hire him as a Software Engineer and to terminate him as part of its involuntary reduction-in-force are hereby **DISMISSED WITH PREJUDICE.** Walls's age discrimination claims will proceed to trial.

**SO ORDERED.**